UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JESSICA KOSNICK SUMPTER,

                              Plaintiff,

        -against-                                    9:20-CV-0619 (LEK/DJS)

ALBANY COUNTY, *et al.,*

                              Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

        On June 3, 2020, Jessica Sumpter filed this civil rights action against Michael Snyder,

Albany County, Albany County Correctional Facility ("ACCF"), Albany County Sheriff's Office

("ASCO"), Albany County Sheriff Craig Apple, Correction Officer Joe Doe, ACSO employees

John Doe 1 and John Doe 2, ACCF Supervisors John Doe 1 and John Doe 2, Greene County,

Greene County Sheriff's Department, Green County Sheriff Gregory R. Seeley, and Greene

County Jail Superintendent Michael J. Spitz, asserting claims under the Sixth, Eighth, and

Fourteenth Amendments of the United States Constitution, 34 U.S.C. § 303, New York State

Corrections Law § 500-b, and other federal and state statutes. Dkt. No. 1 ("Complaint") ¶¶ 8–20,

44–63.

        Before the Court is Snyder's motion to stay proceedings in this case pending the outcome

of state criminal proceedings against him. See Dkt. No. 9 ("Motion"). Accompanying Snyder's

Motion are a Memorandum of Law, Dkt. No. 9-1 ("Snyder's Memorandum of Law"), and a

declaration of defense counsel Paul DerOhannesian, Dkt. No. 9-2 ("DerOhannesian

Declaration"). Sumpter filed a response to the Motion, which contains a Memorandum of Law,

Dkt. No. 18 ("Sumpter's Memorandum of Law"), and an affirmation of Plaintiff's counsel Stuart

Shaw, Dkt. No. 18-1 ("Shaw Affirmation"). Snyder filed a reply. Dkt. No. 19 ("Reply").[1]

For the reasons that follow, Snyder's Motion is denied.

## II.    BACKGROUND

### A.  The Present Civil Suit and the Parallel Criminal Proceedings

Snyder, a correction officer employed by ACCF, see DerOhannesian Decl. ¶¶ 7–8, was

previously indicted on criminal charges in connection with alleged criminal conduct of which

Rebecca Patrick and Plaintiff were alleged victims. See Dkt. No. 17-3 ("Indictment"). Patrick

and Plaintiff were both incarcerated at ACCF at times relevant to the criminal charges against

Snyder as well as the claims in this case. See generally Indictment. On April 17, 2019, Snyder

was indicted in Albany County Court on thirteen counts: three counts of rape in the third degree,

two counts of criminal sexual act in the third degree and eight counts of sexual abuse in the

second degree. See Indictment; DerOhannesian Decl. ¶¶ 7–8. The Indictment is based on

allegations that Snyder subjected both Patrick and Plaintiff to unwanted sexual contact on

multiple occasions. DerOhannesian Decl. ¶ 9.

The conduct giving rise to this suit substantially coincides with the conduct giving rise to

the indictment against Snyder. See Snyder's Mem. of Law at 7. In the criminal case, Plaintiff was

the complaining witness for the first five counts ("Sumpter Counts"), id. ¶ 10, while Patrick was

the complainant for counts six through thirteen, the sexual abuse in the second degree counts

("Patrick Counts"), DerOhannesian Decl.  ¶ 7, and the plaintiff in the related Patrick Matter, id ¶

---

[1]  Snyder filed a nearly identical motion, with nearly identical supporting papers, in a related civil case brought by Rebecca Patrick. See Patrick v. Apple et al., No. 20-CV-47 ("Patrick Matter"), Dkt. No. 17.

1.

      The Indictment was dismissed on legal insufficiency and speedy trial grounds.

DerOhannesian Decl. ¶¶ 17, 22. On  December 20, 2019, Snyder moved to dismiss the Patrick

Counts, arguing that the Indictment was legally insufficient in that it was not sufficiently

particularized as to time and date. DerOhannesian Decl. ¶ 17. On December 30, 2019, the Albany

County Court issued a Decision and Order granting Snyder's motion to dismiss the Patrick

Counts. Dkt. No. 23-1 ("December 2019 Decision"). The court found that the Indictment, which

stated only that Snyder "grop[ed] the same adult female's buttocks on eight occasions, between

7:00 AM and 3:00 PM," on some eight of fourteen listed dates, did not provide sufficient

specificity to permit Snyder to adequately prepare a defense and to safeguard against double

jeopardy in a future prosecution, and that the People had not "engaged in adequate investigatory

efforts" that might have permitted them to determine more specific dates and times. Dec. 2019

Decision at 3–5. On January 6, 2020, Snyder filed a motion to dismiss the Sumpter Counts on

speedy trial grounds. DerOhannesian Decl. ¶18. On May 14, 2020, the criminal court granted

Snyder's motion to dismiss the Sumpter Counts. Dkt. No. 23-2 ("May 2020 Decision"). In that

decision, the Albany County Supreme Court recounted the People's lack of diligence in

prosecuting the case. See generally id. The court detailed the People's continual dilatory conduct

and failure to proffer any legal theories in opposing Snyder's motion to dismiss to demonstrate

that any of the roughly seven months of delay in proceeding to trial was excludable under N.Y.

C.P.L. § 30.30.[2] Id.

---

    [2]  N.Y. C.P.L. § 30.30 requires that the People be ready for trial within six months of the
commencement of a criminal action wherein a defendant is accused of a felony, N.Y. C.P.L. §
30.30(1)(a), and provides a variety of bases for excluding periods of time from the six-month

Subsequent to the dismissal of the criminal charges against Snyder, Patrick and Plaintiff separately filed civil suits against Snyder and other parties. On January 13, 2020, Patrick filed a related civil action in the Northern District of New York. Patrick Matter, Dkt. No. 1. And on June 3, 2020, Plaintiff commenced the present action. Docket.

On June 10, 2020, the People filed notices of appeal with respect to both the December 2019 Decision and the May 2020 Decision. DerOhannesian Decl. ¶ 28. The People, however, have not appealed. Pl.'s Mem. of Law at 7.[3]

**B. Snyder's Request for a Stay and Plaintiff's Response**

Snyder seeks a stay of proceedings in this case. DerOhannesian Decl. ¶ 30; Snyder's Mem. of Law at 3–5. More specifically, Snyder "requests a stay of these civil proceedings until 45 days after an acquittal, conviction or conclusion of an appeal or appeals by the People in the related criminal matter." Snyder's Mem. of Law at 5. As a term of this stay, however, Snyder requests an exception permitting the Greene County defendants in this case to file a motion to dismiss and have that motion decided. DerOhannesian Decl. ¶ 36. Counsel for all defendants in both related civil actions consent to Snyder's Motion. Id. ¶ 35–36.

Snyder argues, primarily, that a stay is necessary to prevent prejudice inherent in being compelled in this proceeding to choose between, on the one hand, incriminating himself, and on the other hand, either permitting adverse inferences to be drawn from his silence when he invokes his Fifth Amendment privilege, or neglecting to vigorously defend the action. See

count, § 30.30(4).

[3] Pursuant to the Practice Rules of the Appellate Division, the People have six months from the filing of their notice of appeal to submit a brief and record, § 1250.9(a), with the possibility of a sixty-day extension to do so, § 1250.9(b).

4

Snyder's Mem. of Law at 5–7. Plaintiff mainly counters that, due to uncertainties regarding the future of the criminal case, any prejudice to defendant is remote and conjectural and thus outweighed by more imminent and likely prejudice to Plaintiff through delay in pursuing her claims. See Pl.'s Mem. of Law at 5, 7, 11, 12. The Court provides a more complete exposition of the parties' arguments below.

### III.    LEGAL STANDARDS

The party moving for a stay "bears the burden of establishing its need." Louis Vuitton Malletier S.A v. LY USA Inc., 676 F.3d 83, 97 (2d Cir. 2012) (quoting Clinton v. Jones, 520 U.S. 681, 708 (1997)). "[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why [a] plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." Transatlantic Reinsurance Co. v. Salatore Ditrapani, Int'l, No. 90-CV-3884, 1991 WL 12135, at *2 (S.D.N.Y. Jan. 28, 1991) (quoting Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980)).

The Court has the power and discretion to stay a civil action pending the outcome of related criminal proceedings. See Arden Way Assoc. v. Boesky, 660 F.Supp. 1494, 1496 (S.D.N.Y.1987) (noting that a court has the authority to "defer[] civil proceedings pending the completion of parallel  criminal prosecutions when the interests of justice seem[]to require such action."). But such relief is not constitutionally mandated. See Nosik v. Singe, 40 F.3d 592, 596 (2d Cir. 1994) (noting that "nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter."); United States v. Kordel, 397 U.S. 1, 11 (1970) (noting that it is neither a "violation of due process [n]or a departure from proper standards in the administration of justice" to permit the government to conduct civil and criminal

5

proceedings concerning the same subject matter simultaneously, and that the government should

not invariably be required to "defer civil proceedings pending the ultimate outcome of a criminal

trial"); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc) ("The

Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of

criminal proceedings."), cert. denied, 449 U.S. 993 (1980).

Courts in this Circuit often utilize a six-factor balancing test in determining the propriety

of a stay of a civil proceeding pending the outcome of a parallel criminal action, examining:

> 1) the extent to which the issues in the criminal case overlap with
> those presented in the civil case; 2) the status of the case, including
> whether the defendants have been indicted; 3) the private interests of
> the plaintiffs in proceeding expeditiously weighed against the
> prejudice to plaintiffs caused by the delay; 4) the private interests of
> and burden on the defendants; 5) the interests of the courts; and 6) the
> public interest.

Louis Vuitton, 676 F.3d at 99 (citing Trs. of Plumbers & Pipefitters Nat'l Pension Fund v.

Transworld Mechanical, Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

"Whether the defendant has been indicted has been described as 'the most important

factor' to be considered in the balance of factors." Maldanado v. City of New York, No.

17-CV-6618, 2018 WL 2561026, at *2 (S.D.N.Y. June 4, 2018) (quoting Karimona Investments,

LLC v. Weinreb, No. 02-CV-1792, 2003 WL 941404, at *3 (S.D.N.Y. Mar. 7, 2003)). Courts in

this Circuit "have often granted post-indictment stays" of civil proceedings pending the

resolution of parallel criminal proceedings. Savalle v. Kobyluck, Inc., No. 00-CV-675, 2001 WL

1571381, at *2 (D. Conn. Aug. 15, 2001). Indeed, a post-indictment procedural posture appears

in practice to be almost a prerequisite to granting a stay of related civil proceedings. See

Citibank, N.A. v. Hakim, No. 92-CV-6233, 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993)

(noting that "[i]n this Circuit, however, district courts generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted," and collecting cases). Pre-indictment stays are relatively unusual. See, e.g., Maldanado, 2018 WL 2561026, at *2 (noting that "where the defendant has not yet been indicted, the factor 'tips strongly in Plaintiff's favor'") (quoting Karimona Investments, 2003 WL 941404, at *3); In re Par Pharmaceutical, 133 F.R.D. 12, 13 (S.D.N.Y.1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment, . . . but will deny a stay of the civil proceeding where no indictment has issued"); Citibank, 1993 WL 481335, at *1 ("Although defendant Hakim allegedly is a target of a continuing grand jury investigation, he does not claim to have been indicted. Accordingly, Hakim's pre-indictment motion to stay can be denied on this ground alone.").

At least two considerations, both pertaining to the competing interests and relative burdens on the parties, underlie this distinction between pre-indictment and post-indictment stays. First, "it is inherently unclear to the Court just how much the unindicted defendant really has to fear." Maldanado, 2018 WL 2561026, at *2 (quoting Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). "As a result, the court considering the request cannot conclude with any degree of certainty that there is a significant burden on the defendant in proceeding in the civil case. Second, "the delay imposed on the plaintiff is potentially indefinite." Id. (quoting Sterling Nat'l Bank, 175 F. Supp. 2d at 577)). "This is because the court cannot know how complicated the government's investigation may be, whether the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in a lengthy and open-ended investigation, what priority the government assigns to the investigation,

whether it will result in charges that will have to be litigated, or how time-consuming the resulting criminal case will be." Id.

But this distinction does not amount to a "hard-and-fast rule," see Savalle, 2001 WL 1571381, at *2, that categorically bars stays pre-indictment and mandates them post-indictment. Rather, it is "at best, a guide to the exercise of discretion." Sterling Nat'l Bank, 175 F. Supp. 2d at 576–77. For the Court has inherent discretion in determining whether to stay civil matters pending before it until criminal proceedings against the defendant are resolved, and this exercise of discretion must be based on an individualized assessment of each case. See Banks v. Yokemick, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001) (noting that the decision whether to grant a stay "demands a particularized inquiry into the circumstances of, and the competing interests in, [each] case"). Courts can and do deny post-indictment stays and grant pre-indictment stays, when warranted by particular circumstances. See, e.g., Paine, Webber, 486 F. Supp. at 1118–19 (denying a post-indictment stay of parallel civil proceedings); In re 650 Fifth Ave., No. 08-CV-10934, 2011 WL 3586169, at *4 (S.D.N.Y. Aug. 12, 2011) (noting that "[t]here is no question that a court has discretion to stay a civil litigation even in favor of a pending investigation that has not ripened into an indictment[.]") (quoting Sterling Nat'l Bank, 175 F.Supp.2d at 577). A pre-indictment stay may be warranted, for instance, when "there is an imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the very near future." Maldanado, 2018 WL 2561026, at *2 (citing In re 650 Fifth Avenue, 2011 WL 3586169, at *3).

## IV.   DISCUSSION

Below, the Court assesses the propriety of a stay, considering the six factors recognized in Louis Vuitton, see 676 F.3d at 99. Snyder argues, and the Court agrees, with respect to the first factor, that "the issues in the criminal case" largely "overlap with those presented in the civil case." Id.; Snyder's Mem. of Law at 7.[4] The Court thus focuses its attention on the remaining factors. Because, as discussed, the significance of the "status of the case," Louis Vuitton, 676 F.3d at 99, is intertwined with considerations of the relative weight of the interests and burdens at stake, id., the Court considers the second, third, and fourth factors together. The analysis of those factors is followed by a discussion of the interests of the public and the Court.

### A.  Status of the Criminal Case, Competing Interests, and Relative Burdens

Both Plaintiff and Snyder focus centrally in their briefs on the procedural status of the criminal action. Snyder analogizes this case to other post-indictment cases, while Plaintiff emphasizes that the dismissal of the indictment distinguishes this case from those in which a defendant faces criminal proceedings that are imminent or ongoing, in that the potential prejudice to the defendant here is more remote and speculative. Snyder's Mem. of Law at 7–8; Pl.'s Mem. of Law at 6–8. As Plaintiff rightly argues, this case is unique, in that it is, all at once, post-

---

[4] This factor does not appear to bear significant weight, at least where a private party brings the civil action at issue. See, e.g., Citibank, 1993 WL 481335, at *2 ("Although the risk of prejudice to a civil defendant is heightened when the subject matter of the civil action parallels a pending criminal action, the potential for prejudice is diminished where, such as here, a private party, not the government, is the plaintiff in the civil action; it is less likely in such cases that the civil discovery process will be used as a cloak to conduct criminal discovery.") (internal citations omitted); Maldanado, 2018 WL 2561026, at *3 ("[T]his is not a case in which the government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls."). For this reason, and because, as discussed below, all other factors weigh against Snyder, the Court does not place great significance on the overlapping subject matter of the civil and criminal cases.

indictment, post-dismissal of the indictment, and potentially pre-appeal. Neither party cites any case in this posture, apparently because there are not many. Because there is a dearth of cases of this type, and because the pre-indictment/post-indictment distinction plays a central role in the case law, see Maldanado, 2018 WL 2561026, at *2, the Court will attempt to determine whether this case is more analogous to those in the investigatory, pre-indictment stage, or to cases in which the defendant has been indicted and faces imminent or ongoing criminal proceedings. The Court finds that this case is more analogous to the former, and that, largely for that reason, a stay is unwarranted.

Snyder likens this case to other post-indictment cases, and points to particular facts that, as in a case in which a trial is imminent or ongoing, purportedly both make potential prejudice to Snyder likely and enable the Court to ascertain roughly how long a stay must be in effect. First, Snyder argues that, although the People have not yet appealed, they are likely to do so. Reply at 4–5. Snyder notes that "[f]ollowing  the [May 2020 Decision], a spokeswoman for the People asserted" in a statement quoted in a May 24 news article "that they were very disappointed with [the trial court's] decision and will appeal." Id. (internal quotation marks omitted). Despite the fact that the People made this statement nearly three months ago and still have not appealed, casting some doubt on their commitment to doing so, the Court will assume for the sake of argument that the People will appeal. Perhaps they are making preparations at this very moment.

But even if the People do appeal, there are several contingencies that both make it difficult for the Court to ascertain how long the requested stay would have to last to ensure that Snyder is protected from any risk of prejudice and raise doubts about the likelihood of that risk. For instance, once the People appeal, it is difficult to predict when the Appellate Division will

issue a decision. It is also unknown whether there will be an additional appeal to the New York Court of Appeals, and, if so, when the highest court will issue a decision. Moreover, given the serious constitutional issues that the state trial courts compellingly reasoned would be implicated by the continued prosecution of this case, it seems unlikely, albeit surely not impossible, that the People would ultimately prevail on appeal. Snyder further asserts that if the People succeed on either of their appeals, they will proceed to trial immediately, as the case is "trial ready." Reply at 4. But this only eliminates uncertainty subsequent to all of the contingencies already mentioned.

The remote and speculative possibility that Snyder will be subject to prosecution makes this case analogous to those in a pre-indictment posture. For "it is inherently unclear to the Court just how much the unindicted defendant really has to fear," Maldanado, 2018 WL 2561026, at *2 (quoting Sterling Nat'l Bank, 175 F. Supp. 2d at 577), as it is uncertain, at best, that the People will be legally permitted to bring this case to trial. And it is difficult to guess "what priority the government assigns to the [appeal], whether it will result in . . . [further] litigat[ion], or how time-consuming the resulting criminal case will be," should the case ultimately proceed to trial. Id. In pre-indictment cases, courts determine whether "there is an imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the very near future." Maldanado, 2018 WL 2561026, at *2. This would be an implausible characterization of Snyder's situation, even considering the particular oases of certainty Snyder highlights in forecasting the trajectory of the criminal case.

The Court is reassured in its conclusion that this case is better analogized to those involving pre-indictment stays after considering persuasive cases in other jurisdictions involving more closely analogous criminal procedural postures. In Pullen v. Howard, the court denied a

stay when an indictment had been dismissed but the state had publicly expressed an intent to re-file charges. No. 14-CV-104, 2015 WL 145091, at *3 (S.D. Ohio Jan. 12, 2015). The court found that the factor of "the stage of the criminal proceeding" weighed against a stay, noting that the prosecutor, similarly to the People in this case, had not yet re-filed charges two months after it announced its intention to do so and about eighteen months after the alleged criminal conduct occurred. Id. at *2. And in SEC v. Exotics, the court granted the plaintiff's motion to lift a stay of civil proceedings when the parallel criminal action had been dismissed due to a mistrial, and the dismissal had been upheld on appeal to the Ninth Circuit. No. 05-CV-531, 2008 U.S. Dist. LEXIS 139364, at *10, *14–15 (D. Nev. May 19, 2008). The court found that the possibility of a reversal via an en banc re-hearing of the appeal or upon appeal to the Supreme Court was too speculative, as "such reversal will not occur for many months, if not years," and "although this Court cannot predict whether the Government will seek reversal of Ninth Circuit decision, the Court has not been provided with any basis for concluding that reinstatement of the indictment is likely to occur." Id. at *10. This case is analogous, in that a possible future criminal trial would occur many months from now, and in that Snyder has not provided any basis, nor is there any obvious basis, for believing that the People would be successful on appeal.

Snyder argues that Plaintiff does not present particularized concerns regarding the preservation of evidence. See Snyder's Mem. of Law at 7 ("[n]one of the alleged sexual assaults were captured on any of the many cameras present," "[a]s to Sumpter, testing has long been concluded for any physical evidence that was collected," "any material that could be deemed evidence is being preserved by the people," and "the People have not disclosed, and Defense counsel is unaware, of any eyewitnesses to the alleged sexual assault") (citing DerOhannesian

Decl. ¶¶ 12–13). By Snyder's account, in other words, Plaintiff presents nothing more than the generalized concern that delay in proceeding to discovery will postpone the vindication of her rights. This, according to Snyder, is not enough to defeat a stay.

But even Plaintiff's general and commonplace interest in expeditiously advancing her claims is sufficient to defeat a stay since Snyder has not met his burden to establish any likely or imminent prejudice to his ability to defend this case. Snyder himself has raised nothing more than a generalized concern, present in every instance of parallel civil and criminal proceedings, "that he will be forced to choose between testifying or asserting his Fifth Amendment privilege, and, in turn, either risking self-incrimination or adverse inferences and a diminished ability to defend against the civil claims asserted against him." See Citibank, 1993 WL 481335, at *2. This concern, in the abstract, absent any evidence of unique or unusual burdens on the defendant, "will not alone justify a stay of civil discovery." See id.; see also Transatlantic Reinsurance Co.,1991 WL 12135, at *2 ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim."); Paine, Webber, 486 F. Supp. at 1119 ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim.").

Moreover, there are some particularized concerns here related to the preservation of evidence. Plaintiff may not be able to point to a need to preserve video evidence or capture eyewitness's memories before they fade. But there is also a concern that the memories of the parties themselves will fade if depositions do not begin until several months from now, or longer, a worry made yet more plausible by the fact that eighteen months have already passed since the

13

relevant alleged conduct occurred. <u>See generally</u> Indictment.

Accordingly, the second, third, and fourth factors weigh against a stay. Like a pre-indictment stay, a post-dismissal-of-indictment stay in this case would protect the defendant from a relatively remote and conjectural burden, at the expense of imposing real and immediate burdens on the Plaintiff's interest in expeditiously advancing her claims.

**B.  The Interests of the Public and the Court**

Both this civil action and the parallel criminal case implicate important public concerns pertaining to the conditions of confinement prevailing in New York prisons. The public has an interest not just in holding prison officials accountable when they violate the law, but also, more fundamentally, an interest in access to information about official misconduct and the state of carceral institutions. But because the People have so far not prosecuted the criminal case in a competent manner, this civil action is likely the most efficient, and may even prove to be the only avenue for the public to uncover the truth of what occurred between the parties and facilitate a just resolution of their dispute. Similarly to the context of civil suits under the Racketeer Influenced and Corrupt Organizations Act, a stay in this case disserves the public interest, because private enforcement of Plaintiff's rights "supplement[s] the government's limited resources for pursuing criminal activity." <u>Sterling Nat. Bank</u>, 175 F. Supp. 2d at 580; <u>see also</u> <u>Briscoe v. Lahue</u>, 460 U.S. 325, 337 (1983) (noting that in passing the The Ku Klux Klan Act of 1871, which codified the current 42 U.S.C. § 1983, Congress created a private right of action to remedy constitutional violations out of concern that due to "the breakdown of law and order in the Southern States," perpetrators of racial violence escaped state criminal prosecution).

More generally, our legal system depends centrally on the role of private attorneys general

14

in remedying legal violations when the government is unable or unwilling to do so. See, e.g.,

Hanna L. Buxbaum, *The Private Attorney General in a Global Age: Public Interests in Private*

*International Antitrust Litigation*, 26 Yale J. Int'l L. 219, 222–223 (2001) (noting that "[e]fforts

of governmental agencies to enforce regulatory statutes are enhanced in many areas of law,

including environmental law and securities regulation, by . . . private litigation."); Christopher

W. Robbins, *Finding Terrorists' Intent: Aligning Civil Antiterrorism Law with National*

*Security*, 83 St. John's L. Rev. 1201, 1253 (2009) (noting that "[c]ivil litigation has proved to be

a tool against the growth of violent hate groups within the U.S. as a supplement to criminal

action"); Chance v. Board of Examiners, No. 70-CV-4141, 1975 U.S. Dist. LEXIS 13001, at *5

(S.D.N.Y. Apr. 4, 1975) (noting in awarding attorneys' fees in an anti-discrimination § 1983

action against state officials and agencies that "[t]he plaintiffs as private attorneys general have

performed a public function of great importance for which they should be compensated."). This

case exemplifies the value of this system.

　　　Moreover, the Court has an interest in the orderly and efficient management of its docket

that would be ill-served by the stay Snyder requests. Granting this stay would entail putting this

case on hold for an indeterminate period of time. The Court prefers to set firm dates for the

upcoming procedural steps in this case. Citibank, 1993 WL 481335, at *2 (noting that "it is

unrealistic to postpone indefinitely the pending action until criminal charges are brought,"

because "[s]uch a postponement would require this court . . . to rely upon fortuitous events to

manage its docket").

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Snyder's motion for a stay (Dkt. No. 9) is **DENIED without**

**prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:       August 19, 2020
             Albany, New York


_____
Lawrence E. Kahn
U.S. District Judge

16