**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────

JESSICA KOSNICK SUMPTER,

                Plaintiff,

     v.                               9:20-cv-00619 (AMN/DJS)

ALBANY COUNTY, *et al.*,

                Defendants.
────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **PENBERTHY LAW GROUP LLP**<br>227 Niagara Street<br>Buffalo, New York 14201 | **BRITTANY L. PENBERTHY,**<br>**ESQ.** |
| **STUART R. SHAW, ATTORNEY AT LAW**<br>30 West 95th Street, Suite 1st Floor<br>New York, New York 10025<br>*Attorneys for Plaintiff* | **STUART R. SHAW, ESQ.** |
| **ALBANY COUNTY ATTORNEY'S OFFICE**<br>112 State Street<br>Albany, New York 12207<br>*Attorneys for Defendants Albany County, Albany*<br>*County Correctional Facility, Albany County Sheriff's*<br>*Department, Craig D. Apple, Jr., and Michael Lyons* | **KEVIN MCDONALD**<br> **CANNIZZARO, ESQ.**<br>**MICHAEL L. GOLDSTEIN,**<br>**ESQ.** |
| **DEROHANNESIAN & DEROHANNESIAN**<br>159 Wolf Road – Suite 305<br>Albany, New York 12205<br>*Attorneys for Defendant Michael Snyder* | **PAUL DEROHANNESIAN, II,**<br>**ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On June 3, 2020, Jessica Kosnick Sumpter ("Plaintiff"), commenced this action pursuant

to 42 U.S.C. 1983 ("Section 1983"), 34 U.S.C. § 303 (the Prison Rape Elimination Act, "PREA"),

and New York State law against the following Defendants: (i) Correction Officer Michael Snyder ("Defendant Snyder"); (ii) Albany County, Albany County Correctional Facility, Albany County Sheriff's Department, Albany County Sheriff Craig D. Apple, Jr., and Albany County Correctional Facility Superintendent Michael Lyons (the "Albany County Defendants"); (iii) Greene County, Greene County Sheriff's Department, Greene County Sheriff Gregory R. Seeley, and Greene County Jail Superintendent Michael J. Spitz (the "Greene County Defendants"); and (iv) Correction Officer Joe "Doe" a/k/a Joe Linn and Employees/Supervisors John Does 1 and 2 (the "Doe Defendants" and, collectively with Defendant Snyder, the Albany County Defendants, and the Greene County Defendants, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff asserts more than a dozen claims related to her allegations of repeated sexual assault by Defendant Snyder and seeks $10 million in damages.

Presently before the Court[1] are motions by Defendant Snyder and the Albany County Defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), the former seeking partial dismissal and the latter seeking complete dismissal of Plaintiff's claims. Dkt. Nos. 127, 128 (each, a "Motion"). Defendant Snyder also moves for an order pursuant to Rule 56(g) establishing certain material facts. Dkt. No. 127-13 at 6, 13.[2] Plaintiff submitted responsive papers in opposition to each Motion and the moving Defendants submitted reply papers in further support. Dkt. Nos. 130-131, 133-134.

For the reasons set forth below, Defendant Snyder's Motion is granted in part and denied in part and the Albany County Defendants' Motion is granted in full.

---

[1] This case was reassigned to the undersigned on January 19, 2023. Dkt. No. 100.
[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

## II.    BACKGROUND[3]

### A.  The Parties

In December 2018, Plaintiff pled guilty to a violation of probation in Greene County and received a sentence of less than one year.  Dkt. No. 1 at ¶ 21.[4]  Because Greene County did not have adequate facilities for women at that time, Plaintiff was instead sent to the Ulster County jail. *Id.*  Plaintiff was subsequently transferred to the Albany County Correctional Facility.  *Id.*

Plaintiff remained incarcerated on the "6W" tier at the Albany County Correctional Facility from January 18, 2019, until her release on April 5, 2019.  Dkt. No. 127-1 at ¶ 9.  For some portion of her incarceration, Plaintiff worked on the "7W" tier, as a "runner."  Dkt. No. 130-3 at ¶¶ 34, 36.  This voluntary position involved serving food and passing out supplies to the incarcerated individuals housed on the tier, doing laundry for those individuals, and also cleaning the tier.  Dkt. No. 127-1 at ¶ 10-11; Dkt. No. 130-3 at ¶ 36; Dkt. No. 1 at ¶ 26.  Various correction officers supervised Plaintiff while she was working on 7W, including Defendant Snyder.  Dkt. No. 127-1 at ¶¶ 1-2, 4.

For present purposes, the Greene County Defendants were responsible for Plaintiff's transfer to the Albany County Correctional Facility, *see* Dkt. No. 1 at ¶ 17, where Albany County

---

[3] Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response.  Plaintiff's counterstatement of material facts for Defendant Snyder's Motion begins on page 5 of Docket Number No. 130-3, and her counterstatement of material facts for the Albany County Defendants' Motion begins on page 7 of Docket Number 131-1.  The Court has also considered the parties' other submissions and attached exhibits.  *See generally* Dkt. Nos. 127-134.

[4] A verified pleading, like the Complaint in this case, may "be treated as an affidavit for summary judgment purposes."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609, 617-18 & n.4 (2d. Cir. 2020); *see also Saba Capital Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 111 n.5 (2d Cir. 2023) (citing *Colon* and noting that sworn statements in a verified complaint can "have the evidentiary weight of an affidavit for purposes of summary judgment").

Defendants employed, trained, and supervised Defendant Snyder, *see id.* at ¶ 2.

### B. Plaintiff's Allegations

Plaintiff alleges that Defendant Snyder sexually assaulted her several times in March 2019, while she was incarcerated and working as a runner on 7W.  Dkt. No. 130-3 at ¶¶ 34-42.[5]  Plaintiff first reported these alleged assaults to authorities on March 23, 2019.  Dkt. No. 129 at ¶ 44; Dkt. No. 1 at ¶ 37.  That same day, Defendant Snyder was removed from 7W before the end of his shift, *see* Dkt. No. 127-1 at ¶ 30; Plaintiff was interviewed by criminal investigators from the Albany County Sheriff's Office, *see* Dkt. No. 1 at ¶ 39; the Albany County Sheriff's Office collected various items of evidence from Plaintiff, including rubber gloves containing Defendant Snyder's semen, *see* Dkt. No. 127-1 at ¶¶ 37-38; Dkt. No. 130-3 at ¶¶ 23-24, 42; Dkt. No. 1 at ¶ 39; and Plaintiff was transported to Albany Medical Center for evaluation and treatment, *see* Dkt. No. 1 at ¶¶ 40-41, 50.

When Plaintiff returned to the Albany County Correctional Facility early on the morning of March 24, 2019, she was moved to a private room within the facility's medical unit instead of being returned to her shared living space on 6W.  Dkt. No. 127-1 at ¶ 26; 133-2 at ¶ 32; Dkt. No. 131-1 at ¶ 63; Dkt. No. 1 at ¶ 27.  Plaintiff was housed in the medical unit until her release on April 5, 2019.  Dkt. No. 1 at ¶¶ 42-43.  During this time, she was able to make phone calls and had

---

[5] Plaintiff describes the alleged sexual assaults only in summary fashion in her counterstatement of material facts.  Plaintiff's statements concerning the details of the alleged conduct—in her April 2019 grand jury testimony, *see* Dkt. Nos. 130-1, 130-2, her October 2019 deposition testimony, *see* Dkt. No. 128-4, her June 2020 verified complaint, *see* Dkt. No. 1, and her September 2023 deposition testimony, *see* Dkt. No. 128-8—have varied somewhat.  As for Defendant Snyder, who denies Plaintiff's allegations, his version of events is that he did not sexually assault Plaintiff, but that he masturbated into rubber gloves while working on 7W.  *See* Dkt. No. 127-1 at ¶¶ 23-25.  Defendant Snyder further contends that he discarded one glove in a garbage receptacle, and that Plaintiff could have come into possession of his semen by retrieving the glove from the receptacle while she performed her cleaning duties on 7W.  *Id.* at ¶¶ 43-44; Dkt. No. 128-10 at 119:22-120:6.

at least one conversation related to obtaining counsel for a future civil lawsuit.  Dkt. No. 127-1 at ¶¶ 31-35; Dkt. No. 128-8 at 203:22-24, 204:18-24.  Prior to her release, Plaintiff also met with a rape advocate, the Albany County District Attorney's Office, and testified before an Albany County grand jury regarding the alleged sexual assaults by Defendant Snyder.  Dkt. No. 1 at ¶ 43.

Plaintiff asserts numerous claims, four of which arise under federal law—(1) a Section 1983 claim for violation of the Eighth Amendment, *see id.* at ¶¶ 80-99; (2) a Section 1983 claim for violation of the Fourteenth Amendment, *see id.* at ¶¶ 100-112; (3) a violation of PREA, *see id.* at ¶¶ 113-121; (4) a Section 1983 claim for violation of the right to counsel under the Sixth Amendment and due process under the Fourteenth Amendment, *see id.* at ¶¶ 122-123—and the balance of which arise under New York State law—(5) violation of New York State Correction Law, *see id.* at ¶¶ 124-129; (6) assault, *see id.* at ¶¶ 130-134; (7) battery, *see id.* at ¶¶ 135-138; (8) negligent supervision, *see id.* at ¶¶ 139-144; (9) negligence, *see id.* at ¶¶ 145-149; (10) intentional/negligent infliction of emotional distress, *see id.* at ¶¶ 150-153; (11) false imprisonment, *see id.* at ¶¶ 154-155; (12) prima facie tort, *see id.* at ¶¶ 156-157; and (13) additional negligence by the Greene County Defendants, *see id.* at ¶¶ 158-160.  Plaintiff seeks $10 million in compensatory, exemplary, and punitive damages against all Defendants, *see id.* at ¶¶ 161-164.

### C.  Procedural History[6]

In April 2019, Plaintiff filed a notice of claim in the New York Court of Claims, seeking $1 million for each of numerous claims related to the alleged incidents in question.  Dkt. No. 1 at ¶¶ 49-50.  Also in April 2019, an Albany County grand jury indicted Defendant Snyder on numerous counts, some as a result of Plaintiff's allegations and the balance because of allegations

---

[6] Throughout this litigation, Plaintiff and various Defendants have requested numerous extensions of time relating to various deadlines.  *See generally* Docket Sheet.  Discovery concluded in January 2024.  Dkt. No. 109.

reported, after Plaintiff's allegations, by a second incarcerated woman.  Dkt. No. 9-3; Dkt. No. 129 at ¶ 45.  All criminal counts against Defendant Snyder were dismissed.  Dkt. No. 20 at 3.

In July 2021, United States Senior District Judge Lawrence E. Kahn dismissed all claims against the Greene County Defendants.  Dkt. No. 65.  As relevant here, Judge Kahn found that (i) Greene County, and not the Greene County Sheriff's Department, was the relevant legal entity subject to suit, *see id.* at 10; (ii) the Complaint failed to allege that Greene County had notice of the alleged Section 1983 violations, *see id.* at 5-9; (iii) the Complaint failed to allege that the Greene County Sheriff and Greene County Jail Superintendent had any personal involvement in the alleged unlawful conduct, *see id.* at 10-12; (iv) PREA "creates no private right of action," *see id.* at 12-13; and (v) given the dismissal of all federal law claims against the Greene County Defendants, exercising supplemental jurisdiction over Plaintiff's state law claims against the Greene County Defendants was not warranted, *see id.* at 13.

## III.   STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4

(N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

Defendant Snyder and the Albany County Defendants, in seeking summary judgment, "bear[] the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [their] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.    DISCUSSION

### A.  Defendant Snyder's Motion

#### 1.  Plaintiff's PREA claim against Defendant Snyder

Plaintiff's third claim is that the alleged sexual assaults by Defendant Snyder, given his role as a correction officer and her status as an incarcerated person, violate PREA. Dkt. No. 1 at ¶¶ 113-121. Relying on caselaw and Judge Kahn's prior decision, Defendant Snyder argues that PREA creates no private right of action. Dkt. No. 127-13 at 8; Dkt. No. 65 at 12. In opposition,

Plaintiff acknowledges that "Courts do not recognize violations of PREA as an individual private cause of action." Dkt. No. 130-4 at 7. The Court agrees that Plaintiff does not have a viable PREA claim. Accordingly, the Motion is granted as to Plaintiff's third claim. *See, e.g., Bright v. Annucci*, No. 18-cv-11111 (NSR), 2021 WL 4461682, at *17 (S.D.N.Y. Sept. 28, 2021) ("Courts in the Second Circuit have held there is no private right of action to bring a suit under the PREA.") (collecting cases); *see also Stephenson v. Davis*, Case No. 3:22-cv-644 (SVN), 2024 WL 50774, at *7 (D. Conn. Jan. 4, 2024) ("[C]ourts in this District have repeatedly held that the PREA does not create a private right of action.") (quotation omitted); *Lewis v. Lyon*, Civil Action No. 2:23-cv-138, 2024 WL 816790, at *8 n.9 (D. Vt. Jan. 4, 2024) ("PREA does not confer a private right of action."); *Wrobleski v. Miller*, 3:19-cv-876 (GLS/ML), 2020 WL 219221, at *3 (N.D.N.Y. Jan. 15, 2020) ("[T]here is no private right of action under the PREA."); *Patterson v. Patterson*, 1:16-CV-00844 EAW, 2017 WL 1383899, at *4 (W.D.N.Y. Apr. 14, 2017) ("There is no private right of action under PREA, and therefore, Plaintiff's claim must be dismissed.").

### 2. Plaintiff's Section 1983 claim against Defendant Snyder for violation of the Sixth Amendment and Fourteenth Amendment

Plaintiff's fourth claim is that after she reported her allegations against Defendant Snyder to authorities on March 23, 2019,[7] she was placed in solitary confinement and could not communicate with her then boyfriend (now husband), which in turn prevented her from communicating with an attorney. Dkt. No. 1 at ¶¶ 71, 122-123. In response, Defendant Snyder argues that (i) Plaintiff was placed in the medical unit—where she could make calls—and not in solitary confinement, and (ii) Defendant Snyder had no personal involvement in the decision to house Plaintiff in the medical unit. Dkt. No. 127-13 at 8-9. In response, Plaintiff acknowledges

---

[7] This date is erroneously alleged as "5/23/19" in this portion of the Complaint. *Compare* Dkt. No. 1 at ¶ 122, *with id.* at ¶¶ 37, 50, 57.

that "[a]dmittedly, Defendant Snyder did not orchestrate Plaintiff's segregation, but he's [sic] actions created the consequence complained herein." Dkt. No. 130-4 at 8.

In Plaintiff's response to Defendant Snyder's statement of material facts, she does not controvert that she "was not housed in a special housing unit or solitary confinement," nor that she "was placed in the medical unit" after reporting her allegations on March 23, 2019. Dkt. No. 127-1 at ¶¶ 26-27; Dkt. No. 130-3 at ¶¶ 26-27. Plaintiff further agrees that while in the medical unit, she "could not recall" any phone restrictions; that, in fact, she "could make phone calls," she indeed "placed phone calls;" and that at least one of her phone calls was with her boyfriend "about her attorney" and "concerned her future [civil] lawsuit." Dkt. No. 127-1 at ¶¶ 31-35; Dkt. No. 130-3 at ¶¶ 31-35; Dkt. No. 128-8 at 203:22-24, 204:18-24. Finally, Plaintiff's proposed counterstatement of materials facts does not assert that she was denied access to either her boyfriend or counsel during her time in the medical unit. Dkt. No. 130-3 at ¶¶ 30-33.

Even after drawing all reasonable inferences in Plaintiff's favor, the Court finds that this factual record does not support Plaintiff's Section 1983 claim for violations of her Sixth Amendment right to counsel and her Fourteenth Amendment right to due process. *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) ("[I]t is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases.") (citation omitted). To the extent there could be a factual basis for such constitutional violations, the Court agrees with Defendant Snyder that he had no personal involvement in any such violations. Dkt. No. 133 at 9; *see also* Dkt. No. 130-4 at 8. Indeed, Plaintiff concedes that she has not claimed "that Defendant Snyder placed her in the medical unit." Dkt. No. 127-1 at ¶ 29; Dkt. No. 130-3 at ¶ 29. Moreover, on the day Plaintiff reported her allegations, Defendant Snyder "was asked to leave his post before his shift ended" and "was not

present" when Plaintiff was moved to the medical unit.  Dkt. No. 127-1 at ¶ 30; *see also Kornegay v. Doe*, No. 09-0690-pr, 2010 WL 1197254, at *1 (2d Cir. Mar. 30, 2010) (summary order) ("It is well settled that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quotation omitted); *acccord Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (affirming summary judgment for correction officer who had no personal involvement in alleged Section 1983 due process violation).  Accordingly, the Motion is granted as to Plaintiff's fourth claim.

### 3.  Plaintiff's New York State Correction Law claim against Defendant Snyder

Plaintiff's fifth claim is that the Albany County Defendants violated New York State Correction Law "e.g. § 500-b, c, et al." by failing to protect her from Defendant Snyder's alleged sexual assaults.  Dkt. No. 1 at ¶¶ 124-129.  Defendant Snyder argues that, assuming New York State Correction Law § 500-b and § 500-c create a private right of action, the statutes are applicable only to senior individuals "involved in jail management" and not correction officers like Defendant Snyder.  Dkt. No. 127-13 at 9-10.  In response, Plaintiff acknowledges that she "is not pursuing a separate cause of action against Defendant Snyder here, as he is neither the sheriff nor the chief administrative officer."  Dkt. No. 130-4 at 8.  As such, the Motion is granted as to Plaintiff's fifth claim.

### 4.  Plaintiff's state law negligence claim against Defendant Snyder

Plaintiff's ninth claim, as to Defendant Snyder, is that he "intentionally made harmful and offensive bodily contact with Plaintiff" when he allegedly sexually assaulted her.  Dkt. No. 1 at ¶ 146.  Defendant Snyder argues that Plaintiff has failed to state a negligence claim against him because she has alleged that he acted intentionally, not negligently.  Dkt. No. 127-13 at 10.  In response, Plaintiff states that she "would make clear there is no claim for negligence against

Defendant Snyder." Dkt. No. 130-4 at 9.  As such, the Motion is granted as to Plaintiff's ninth claim.

### 5. Plaintiff's state law claim for negligent/intentional infliction of emotional distress against Defendant Snyder

Plaintiff's tenth claim, as to Defendant Snyder, is that he "committed the inappropriate, offensive, and sexual conduct towards Plaintiff intentionally and purposefully . . . subjecting her to intentional/negligent infliction of mental distress." Dkt. No. 1 at ¶ 151.  Defendant Snyder argues that this claim is duplicative of Plaintiff's other state law tort claims.  Dkt. No. 127-13 at 11.  In response, Plaintiff states that she "would concede that any allegation for Negligent Infliction of Emotional Distress would be duplicative in nature to her other causes of actions." Dkt. No. 130-4 at 9.  However, Plaintiff argues that her claim for intentional infliction of emotional distress ("IIED") should be allowed to proceed as an alternative "means of recovery." *Id*.  Plaintiff's argument fails as a matter of law.  "Under New York law, claims are duplicative when both arise from the same facts and seek the identical damages for each alleged breach." *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quotation omitted); *see also Cheikhaoui v. City of New York*, No. 22 Civ 08855 (CM), 2023 WL 5917646, at *9 (S.D.N.Y. Sept. 11, 2023) (applying New York law to dismiss duplicative tort claim in Section 1983 action).  Here, the Complaint sets forth the same facts for this claim as those giving rise to Plaintiff's other claims, *see* Dkt. No. 1 at ¶¶ 150-152, and seeks the same $10 million in damages as for Plaintiff's other claims, *see id.* at ¶ 153.  Indeed, Plaintiff concedes that she is simply pursuing this claim as an alternative to her other claims.  Dkt. No. 130-4 at 9-10.  Plaintiff's IIED claim is thus duplicative with her other claims, because it "arise[s] from the same facts and seek[s] the identical damages." *Deutsche Bank*, 810 F.3d at 869 (quotation and citation omitted).

Additionally, Plaintiff fails to squarely address the relevant Second Circuit precedent cited by Defendant.[8]  *See Salmon v. Blesser*, 802 F.3d 249, 256 (2015) ("[U]nder New York law, an intentional infliction tort may 'be invoked only as a last resort,' 'to provide relief in those circumstances where traditional theories of recovery do not.'  Thus, the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'  All four Appellate Division courts have answered the question and held that it cannot.") (citations omitted) (collecting cases).  Notably, the plaintiff in *Salmon* had not actually asserted a battery claim.  Yet the Second Circuit nonetheless found that the district court's dismissal of the plaintiff's IIED claim was appropriate, because the "alleged conduct *would have been actionable* under state law as battery." *Id.* (emphasis added).  Here, in contrast, Plaintiff has asserted state law tort claims against Defendant Snyder for, *inter alia*, battery and assault.  *See* Dkt. No. 1 at ¶¶ 130-138.

Accordingly, because Plaintiff's IIED claim is duplicative of her other tort claims against Defendant Snyder—and unnecessary in light of them—the Motion is granted as to Plaintiff's tenth claim.

### 6.  Plaintiff's state law claim for prima facie tort against Defendant Snyder

Plaintiff's twelfth claim is that "Defendants' actions as forth herein throughout the instant complaint establish as a matter of law that the [D]efendants committed a tort or torts against the [P]laintiff and to her detriment which amount to prima facie torts against the plaintiff to her detriment."  Dkt. No. 1 at ¶ 156.  Defendant Snyder argues that this claim "is meritless" because (i) Plaintiff has failed to allege and prove a necessary element (special damages), and (ii) the claim

---

[8] The Court finds the limited New York authority upon which Plaintiff relies distinguishable, in part for the reasons set forth in Defendant Snyder's reply papers.  Dkt. No. 133 at 10.

is duplicative of Plaintiff's tort claims for battery and assault. Dkt. No. 127-13 at 11-12. In response, Plaintiff states that she "withdraws her state law prima facia tort claim against Defendant Snyder, conceding the facts to date render it duplicative in nature to her other claims." Dkt. No. 130-4 at 10. As such, the Motion is granted as to Plaintiff's twelfth claim.

### 7. Rule 56(g) order

Lastly, Defendant Snyder requests "an order under Rule 56(g) finding the facts identified in its accompanying Local Rule 56.1 statement of material facts as established." Dkt. No. 127-13 at 13. The Court declines to issue this order. Fed. R. Civ. P. 56(g) (2010 Advisory Committee Notes, stating that "[e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event"); *see also Dell's Maraschino Cherries Co., Inc. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 485 (E.D.N.Y. 2012) (declining to issue a Rule 56(g) order).

## B. Albany County Defendants' Motion

### 1. Plaintiff's PREA claim against the Albany County Defendants

Plaintiff's third claim is that the Albany County Defendants "failed to adequately implement the PREA, and that failure led to [Defendant] Snyder's acts of sexual misconduct and sexual harassment towards Plaintiff." Dkt. No. 1 at ¶ 118. The Albany County Defendants rely on Judge Kahn's earlier decision to argue that PREA creates no private right of action. Dkt. No. 128-1 at 9; Dkt. No. 65 at 12. Plaintiff does not address this argument in her opposition. *See generally* Dkt. No. 131-2. Accordingly, the Court deems the PREA claim against the Albany County Defendants abandoned and grants this portion of the Motion. *See, e.g., Jackson v. Federal Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment

should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *see also Bright*, 2021 WL 4461682, at *17 ("Courts in the Second Circuit have held there is no private right of action to bring a suit under the PREA.") (collecting cases).

## 2. Plaintiff's Section 1983 claims against the Albany County Sheriff's Department and the Albany County Correctional Facility

The essence of Plaintiff's first and second claims is that Defendant Snyder's alleged sexual assaults against Plaintiff violated her Eighth and Fourteenth Amendment rights and resulted from a custom or policy of the Albany County Defendants.  Dkt. No. 1 at ¶¶ 81, 100; Dkt. No. 131-2 at 6, 11.  As described previously, Plaintiff's fourth claim is that her Sixth and Fourteenth Amendment rights were violated as a result of her alleged solitary confinement.  Dkt. No. 1 at ¶¶ 122-123.  The Albany County Defendants again rely on Judge Kahn's earlier decision to argue that these three claims cannot be asserted against the Albany County Sheriff's Department and the Albany County Correctional Facility, because neither Defendant is the relevant legal entity subject to suit for Section 1983 claims.  Dkt. No. 128-1 at 9-10; Dkt. No. 65 at 10.  Plaintiff does not address this argument in her opposition.  *See generally* Dkt. No. 131-2.  Accordingly, the Court deems the Section 1983 claims against the Albany County Sheriff's Department and the Albany County Correctional Facility abandoned and grants this portion of the Motion.  *See, e.g., Jackson*, 766 F.3d at 195; *see also Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued.") (quotation omitted) (collecting cases); *Walker v. U.S. Marshals*, No. 08-CV-959 (JG)(AKT), 2009 WL 261527, at *2 (E.D.N.Y. Feb. 4, 2009) (same) (collecting cases).

### 3.   Plaintiff's Section 1983 claims against Sheriff Apple and Superintendent Lyons[9]

The Albany County Defendants further rely on Judge Kahn's decision to argue that Plaintiff's Section 1983 claims, as against Sheriff Apple and Superintendent Lyons in their official capacities, should be dismissed as redundant of Plaintiff's identical Section 1983 claims against Defendant Albany County.  Dkt. No. 128-1 at 10; Dkt. No. 65 at 10-11; Dkt. No. 1 at ¶¶ 99, 112, 123.  Because Plaintiff does not respond to this official capacity argument, the Court deems the Section 1983 claims against Sheriff Apple and Superintendent Lyons in their official capacities abandoned and grants this portion of the Motion.  *See, e.g., Jackson*, 766 F.3d at 195; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."); *Grant v. City of Syracuse*, 5:15-CV-445 (LEK/TWD), 2017 WL 5564605, at *16 n.13 (N.D.N.Y. Nov. 17, 2017) ("[D]istrict courts have [regularly] dismissed official capacity claims against individuals as redundant or unnecessary where *Monell* claims are asserted against an entity.") (alteration in original) (quotation omitted).

To the extent Plaintiff's Section 1983 claims are asserted against Sheriff Apple and Superintendent Lyons in their individual capacities, the Albany County Defendants primarily argue that these two individuals had no personal involvement in the events giving rise to Plaintiff's allegations.  Dkt. No. 128-1 at 10-17.  In opposition, Plaintiff mainly argues that Sheriff Apple and Superintendent Lyons should have been aware of the risk of sexual assault by correction officers at the Albany County Correctional Facility and, thus, their conduct "exhibited deliberate indifference."  Dkt. No. 131-2 at 6-11.

---

[9] In light of the Court's decision herein, the Court does not reach the Albany County Defendants' argument concerning qualified immunity.  *See* Dkt. No. 128-1 at 17-18.

To establish liability against an official under Section 1983, a plaintiff must allege that official's personal involvement in the alleged constitutional violation. *See Victory v. Pataki,* 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability [under Section 1983]. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quotation and citation omitted).

While Plaintiff makes a passing reference to *Tangreti*, *see* Dkt. No. 131-2 at 7, she fails to address the requirements for supervisor liability set forth by the Second Circuit in that decision. *Tangreti* involved a prison supervisor who had witnessed a correction officer "interacting inappropriately twice" with the plaintiff. *Tangreti*, 983 F.3d at 619. The district court found that the supervisor "*should have known* of the substantial risk of sexual abuse" by the correction officer and denied the supervisor summary judgment. *Id.* at 612 (emphasis in original). The Second Circuit reversed and directed summary judgment for the supervisor, finding that the plaintiff had failed to "prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.* at 620.

The record here is entirely devoid of evidence that either Sheriff Apple or Superintendent Lyons had any awareness of—let alone personal involvement in—events giving rise to Plaintiff's allegations. Neither individual is even mentioned within the statements of material facts from Plaintiff or the Albany County Defendants. *See generally* Dkt. Nos. 129, 131-1. Plaintiff also chose not to depose either individual. *See* Dkt. Nos. 128-1 at 14; Dkt. No. 131-2 at 9. Further, Plaintiff has made no allegation that Defendant Snyder's alleged conduct continued after she

reported it to authorities on March 23, 2019.  *See generally* Dkt. No. 1.  Lastly, Plaintiff even

concedes that "Defendants Apple and Lyons may not have been personally aware of a specific risk

related to Plaintiff by Defendant Snyder[.]"  Dkt. No. 131-2 at 14.

Given this factual record, the Court finds unpersuasive Plaintiff's legal argument that

Sheriff Apple and Superintendent Lyons "had at least constructive notice of constitutional torts

committed by their subordinate employees" as a result of 2015 litigation that did not involve

Defendant Snyder.  Dkt. No. 131-2 at 7.  The relevance of that litigation is unclear to the Court, as

is the outcome.  Because there is no indication that Sheriff Apple and Superintendent Lyons had

any personal involvement in events giving rise to Plaintiff's allegations, the Court also grants the

Motion as to Plaintiff's Section 1983 claims against them in their individual capacities.  *Tangreti*,

984 F.3d at 619 (finding that even when supervisor allegedly witnessed inappropriate conduct by

subordinate, "at most it may be said that [defendant supervisor] could have or should have made

an inference of the risk of sexual abuse.  But there is no evidence that [defendant supervisor] made

that inference").

### 4.  Plaintiff's Section 1983 claims against Albany County

Local governments are "persons" under Section 1983 and can be sued directly.  *Monell v.*

*Dep't. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978).  To establish municipal liability

under Section 1983, a plaintiff must "plead and prove three elements: (1) an official policy or

custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray*

*v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393,

397 (2d Cir. 1983)).   Under *Monell*, "[o]fficial municipal policy includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and

widespread as to practically have the force of law."  *Lucente v. County of Suffolk*, 980 F.3d 284,

297 (2d Cir. 2020) (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
However, a municipality may not be held liable under Section 1983 based on the doctrine of
*respondeat superior*.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403
(1997).  Instead, a "plaintiff must also demonstrate that, through its *deliberate* conduct, the
municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must . . .
demonstrate a direct causal link between the municipal action and the deprivation of federal
rights."  *Id.* at 404 (emphasis in original) (citation omitted).

### a.  Plaintiff's Eighth and Fourteenth Amendment claims

As described previously, the essence of Plaintiff's first and second claims is that Defendant
Snyder's alleged sexual assaults against Plaintiff violated her Eighth and Fourteenth Amendment
rights and resulted from a custom or policy of the Albany County Defendants.  Dkt. No. 1 at ¶¶ 81,
100; Dkt. No. 131-2 at 6, 11.  The Albany County Defendants argue that because they had a
thorough PREA program and lacked notice of any deficiencies therein—or sexual misconduct by
any correction officer, including Defendant Snyder—Plaintiff's constitutional claims against them
should fail.  Dkt. No. 128-1 at 18-27.  In response, Plaintiff argues that the PREA program is not
effective and there is "a widespread and pervasive culture of sexual abuse" at the Albany County
Correctional Facility.  Dkt. No. 131-2 at 11-15.

In order to demonstrate "a 'persistent and widespread' practice by a subordinate municipal
employee (or employees) other than a policymaker, the employee's unconstitutional conduct must
be 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'"
*Lucente*, 980 F.3d at 297-98 (citations omitted).  Here, Plaintiff has not established that such an
unconstitutional practice existed.  As to Defendant Snyder, Plaintiff's allegations on March 23,
2019 were the first allegations reported against him.  *See, e.g.,* Dkt. No. 129 at ¶¶ 44-45; Dkt.
No.

131-2 at 14. Further, the factual record here establishes that Defendant Snyder's alleged conduct had ceased by the time Plaintiff reported it and that the Albany County Defendants quickly investigated Defendant Snyder's alleged conduct and provided medical care to Plaintiff. Dkt. No. 127-1 at ¶¶ 26, 30; Dkt. No. 1 at ¶ 39, 41-42. Thus, there is no indication that Defendant Snyder's conduct prior to March 23, 2019 was "so manifest as to imply the constructive acquiescence" of the Albany County Defendants. *Lucente*, 980 F.3d at 297-98. As to other Albany County employees, assuming *arguendo* that the assorted testimony which Plaintiff characterizes is admissible, it suggests that there may have been prior *allegations* of sexual assault at the Albany County Correctional Facility in recent decades—against individuals other than Defendant Snyder, *see* Dkt. No. 131-2 at 13—but fails to establish any "manifest" conduct by any Albany County employee. *Lucente*, 980 F.3d at 297; *see also Schwimmer*, 988 F. Supp. at 638 (finding that a court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative") (citations omitted).

Even assuming there had been an Albany County employee whose unconstitutional conduct was sufficiently "manifest," the Court finds that Plaintiff has not provided evidence of how the Albany County Defendants had notice of the resulting "persistent and widespread" practice of alleged sexual assault at the Albany County Correctional Facility.[10] *Lucente*, 980 F.3d at 297-98; *see also* Dkt. No. 131-2 at 14 (Plaintiff conceding that "Defendants Apple and Lyons may not have been personally aware of a specific risk related to Plaintiff by Defendant Snyder"); Dkt. No. 65 at 8 ("In response to the Motion to Dismiss, Plaintiff states 'these incidents were

---

[10] In light of the Albany County Defendants lack of notice—and given Plaintiff's failure to controvert various material facts relating to the scope and availability of PREA resources within the Albany County Correctional Facility, *see, e.g.,* Dkt. No. 129 at ¶¶ 40-43, 47—the Court need not examine the Albany County Correctional Facility's PREA program in further detail.

publicized'—referring to the 2014 assault and unspecified prior acts of sexual assault—but fails to describe how.  Pl.'s Resp. ¶ 27.  Even this general statement is absent from the Complaint.").

Accordingly, the Motion is granted as to Plaintiff's first and second claims against the Albany County Defendants.

### b.  Plaintiff's Sixth and Fourteenth Amendment claim

As described previously, Plaintiff's fourth claim is that she was placed in solitary confinement after she reported her allegations against Defendant Snyder, violating her Sixth and Fourteenth Amendment rights.  Dkt. No. 1 at ¶¶ 71, 122-123.  The Albany County Defendants argue that Plaintiff (i) was not placed in solitary confinement, and (ii) has not alleged that either Sheriff Apple and Superintendent Lyons were personally involved in her housing, nor that her rights were violated by an Albany County policy or custom.  Dkt. No. 128-1 at 27-29.  In opposition, Plaintiff primarily argues that "[b]ut for Defendant Snyder's unlawful and inappropriate actions, Plaintiff would not have been removed from her cell and secluded 1from [sic] other inmates and her freedoms further limited."  Dkt. No. 131-2 at 15.

Similar to the earlier discussion, *see* Section IV.A.2 *supra*, even after drawing all reasonable inferences in Plaintiff's favor, the factual record before the Court does not support Plaintiff's Section 1983 claim against the Albany County Defendants for violations of her Sixth Amendment right to counsel and her Fourteenth Amendment right to due process.  Plaintiff was not placed in solitary confinement and remained able to make phone calls, including regarding obtaining counsel for a civil lawsuit.  *See* Dkt. No. 127-1 at ¶¶ 31-35; Dkt. No. 130-3 at ¶¶ 31-35; Dkt. No. 128-8 at 203:22-24, 204:18-24.  To the extent this factual record could support Plaintiff's Section 1983 claim against the Albany County Defendants, such a claim fails as a matter of law. Plaintiff has not established personal involvement by any Albany County Defendant in any alleged

deprivation of her constitutional rights.  *See Tangreti*, 983 F.3d at 618.  Moreover, Plaintiff's

assertion that Defendant Albany County is liable because Defendant Snyder was the "[b]ut for"

cause of her placement in the medical unit, *see* Dkt. No. 131-2 at 15, is unavailing.  *See, e.g.,*

*Brown*, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable under a theory

of *respondeat superior*.") (collecting cases); *Lucente*, 980 F.3d at 297.

Accordingly, the Motion is granted as to Plaintiff's fourth claim against the Albany County

Defendants.

### 5.  Plaintiff's state claims against the Albany County Defendants

As relevant here, Plaintiff's sixth, seventh, and ninth claims assert that Defendant Snyder's

alleged sexual assaults against Plaintiff constituted assault, battery, and negligence, respectively,

and that the Albany County Defendants are vicariously liable for each alleged tort, *see* Dkt. No. 1

at ¶¶ 132, 137, 148; Plaintiff's fifth claim is that the Albany County Defendants violated New

York State Correction Law by failing to protect Plaintiff from Defendant Snyder's alleged sexual

assaults, *see id.* at ¶ 124; Plaintiff's eighth claim is that the Albany County Defendants' negligent

supervision of Defendant Snyder resulted in his alleged sexual assaults against Plaintiff, *see id.* at

¶ 143; and Plaintiff's tenth, eleventh, and twelfth claims are that the Albany County Defendants

are liable for intentional/negligent infliction of emotional distress, false imprisonment, and prima

facie tort, respectively, as a result of their "inactions and deliberate indifference" with respect to

Defendant Snyder's alleged conduct, *see id.* at ¶¶ 153, 155, 157.

The Albany County Defendants argue that if the federal claims against them are dismissed,

the Court should decline to exercise its supplemental jurisdiction over these remaining state law

claims.  Dkt. No. 128-1 at 29-30.  Plaintiff acknowledges that "[t]he exercise of jurisdiction over

state law claims is discretionary once all federal claims have been dismissed," but argues that it

would be an "unfortunate injustice to deny Plaintiff an opportunity to pursue the remaining [ ] state claims." Dkt. No. 131-2 at 16. Plaintiff's argument is unpersuasive. The Court notes that Plaintiff has commenced a New York Court of Claims case raising state law claims related to those she asserts here. Dkt. No. 1 at ¶¶ 49-50 (Notice of Claim listing claims for, *inter alia*, assault; battery; negligence; intentional infliction of "[m]ental [d]istress;" false imprisonment; prima facie tort; and violations of the New York State constitution).

As to Plaintiff's remaining state law claims against the Albany County Defendants, the Court grants this portion of the Motion and, pursuant to 28 U.S.C. § 1367(c), declines to exercise supplemental jurisdiction over any remaining state law claims against the Albany County Defendants. *See, e.g., Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[A]s a general proposition . . . if [all] federal claims are dismissed *before trial* . . . , the state claims should be dismissed as well.") (alterations in original) (quotation and citation omitted); *accord Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 481 (2d Cir. 2021) (affirming district court's declination to exercise supplemental jurisdiction over plaintiff's state law claims because it had granted summary against plaintiff's federal law claims); Dkt. No. 65 at 13 (Kahn, J.) (finding supplemental jurisdiction over state claims against the Greene County Defendants unwarranted where no federal claims against them remained); *see also Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989) ("We agree that, in light of the proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over [plaintiff]'s state-law claims against the County."); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.").

### C.  Doe Defendants and Plaintiff's Remaining Claims

The Court notes that, despite several years of discovery, Plaintiff has not amended the complaint to identify any of the Doe Defendants.  *See generally* Docket Sheet.  There is also no indication in the record that Plaintiff properly served the Doe Defendants,[11] as required by Rule 4 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 4(m).  The Complaint was filed on June 3, 2020, and as such Plaintiff's time to complete service expired years ago.  Dismissal is warranted where a plaintiff has ". . .  neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay."  *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007); *see also Tolchin v. Cnty. of Nassau*, 768 F. App'x 60, 61-62 (2d Cir. 2019) (summary order) (affirming dismissal pursuant to Rule 4(m) where plaintiffs did not properly serve defendants until "more than 16 months after the complaint was filed").  As such, Plaintiff's claims against the Doe Defendants are dismissed.

As a result of this Memorandum-Order and Decision, as well as the earlier decision by Judge Kahn, *see* Dkt. No. 65 at 9 n.5, Plaintiff's following claims, solely against Defendant Snyder, remain and may proceed to trial: her first (Section 1983 claim for violation of the Eighth Amendment), *see* Dkt. No. 1 at ¶¶ 80-99; second (Section 1983 claim for violation of the Fourteenth Amendment), *see id.* at ¶¶ 100-112; sixth (New York State law claim for assault), *see id.* at ¶¶ 130-134; seventh (New York State law claim for battery), *see id.* at ¶¶ 135-138; and eleventh (New York State law claim for false imprisonment), *see id.* at ¶¶ 154-155, claims.

---

[11] To the extent Defendant Correction Officer Joe "Doe" a/k/a Joe Linn, was intended to be Joseph J. Len, whose identify Plaintiff knows, given that she deposed him in December 2023, *see* Dkt. No. 128-16, there is no indication that Mr. Len was served with the Complaint.  Dkt. No. 30. Moreover, even if Mr. Len had been served with the Complaint, the Complaint does not appear to state any claim against him.  *See generally* Dkt. No. 1.

V.     **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that the Defendant Snyder's Motion, Dkt. No. 127, is **GRANTED** in part and **DENIED** in part; and the Court further

**ORDERS** that the Albany County Defendants' Motion, Dkt. No. 128, is **GRANTED**; and the Court further

**ORDERS** that Defendants Correction Officer Joe "Doe" a/k/a Joe Linn and Employees/Supervisors John Does 1 and 2 are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's remaining claims, solely against Defendant Snyder, are as set forth in Section IV.C of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 26, 2024
   Albany, New York

Anne M. Nardacci
U.S. District Judge