**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JESSICA KOSNICK SUMPTER,

                    Plaintiff,

        v.                                                   9:20-cv-00619 (AMN/DJS)

MICHAEL SNYDER,

                    Defendant.

**APPEARANCES:**                                         **OF COUNSEL:**

**PENBERTHY LAW GROUP LLP**                      **BRITTANY L. PENBERTHY,**
227 Niagara Street                                        **ESQ.**
Buffalo, New York 14201
*Attorneys for Plaintiff*

**STUART R. SHAW, ATTORNEY AT LAW**              **STUART R. SHAW, ESQ.**
30 West 95th Street, Suite 1st Floor
New York, New York 10025
*Attorney for Plaintiff*

**DEROHANNESIAN & DEROHANNESIAN**                **PAUL DEROHANNESIAN, II,**
159 Wolf Road – Suite 305                                 **ESQ.**
Albany, New York 12205
*Attorneys for Defendant*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

On June 3, 2020, Jessica Kosnick Sumpter ("Plaintiff"), commenced this action pursuant

to 42 U.S.C. § 1983 ("Section 1983") and New York State law against Defendant and others.  Dkt.

No. 1 ("Complaint").  Plaintiff asserted more than a dozen claims related to her allegations of

repeated sexual assault by Defendant and seeks $10 million in damages.  Following motion

practice, Defendant is the sole remaining defendant and Plaintiff's remaining claims against him

are (i) under Section 1983, for violation of Plaintiff's Eighth and Fourteenth Amendment rights, and (ii) under New York State law, for assault, battery, and false imprisonment.  Dkt. Nos. 65, 135.

Trial is set to commence on January 13, 2025.  Dkt. No. 138.  Presently before the Court are motions *in limine* from Plaintiff and Defendant, Dkt. Nos. 147, 139 (each, a "Motion"), and corresponding responses in opposition, Dkt. Nos. 155, 156.  The Court heard further argument from the parties during the final pretrial conference on January 7, 2025.  For the reasons set forth below, each Motion is granted in part, denied in part, and reserved in part.

## II.    STANDARD OF REVIEW

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287).  Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce*, 469 U.S. at 41.  The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion *in limine*.  *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

III.   **DISCUSSION**

The Motions each seek to admit or preclude evidence to be presented at trial.  The Court addresses each Motion in turn.  Familiarity with the alleged facts of this case, as set forth in the Complaint, Dkt. No. 1, and the Court's prior decisions, Dkt. Nos. 65, 135, is presumed.  In summary, Plaintiff alleges that Defendant sexually assaulted her several times in March 2019.  Plaintiff alleges this occurred while she was incarcerated at the Albany County Correctional Facility and working on 7W, the tier where Defendant worked as a correction officer.  Plaintiff first reported these alleged assaults to authorities on March 23, 2019, and subsequently provided rubber gloves containing Defendant's DNA.  Defendant denies Plaintiff's allegations.  His version of events is that he masturbated at work and ejaculated into a rubber glove, which he discarded in a garbage receptable.  Defendant contends that Plaintiff could have come into possession of his DNA by retrieving the glove from the receptacle while she performed her cleaning duties on 7W.  *See generally* Dkt. No. 135 at 4–5 & n.5.[1]

A.  **Plaintiff's Motion *in Limine***

Plaintiff seeks to preclude (i) evidence relating to Defendant's medical history; (ii) Plaintiff's criminal history; and to permit (iii) evidence of Defendant's arrest and prosecution in a dismissed criminal action.  *See* Dkt. No. 147.  The Court addresses each request in turn.

1.  **Defendant's medical history**

As relevant here, Defendant testified during his deposition on September 28, 2023 that he had a prostate biopsy approximately one month prior to the alleged events at issue.  Dkt. No. 147-2 at 4–5.  As a result of this surgical procedure, Defendant stated that he experienced internal

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

bleeding.  *Id.*  Defendant further stated that the physician who performed this procedure told him "[y]ou could be bleeding through urination, defecation, or ejaculation.  He said, [y]our blood will come out somewhere."  *Id.* at 7.  When asked by Plaintiff's counsel whether this physician said that Defendant "need[ed] to ejaculate or something," Defendant acknowledged that the physician had not "actually sa[id] that."  *Id.*  Defendant went on to explain that:

> You can feel -- I don't know.  It's hard to -- I can't really explain it, but you could feel like you're -- I don't want to say full or -- I don't know what you want to call it, but you could tell that you're probably going to start bleeding, so it's either let it come out or get it out in a controlled area where I'm not covered in blood at work.

*Id.* at 9.  Defendant described two times that he masturbated at work, apparently to relieve the sensation he described, once in the officer's station at the entrance to 7W and once in a bathroom on 5W.  *Id.* at 9, 14–16.  As far as the Court is aware, Defendant has not explained why he chose to address whatever sensation he may have perceived through masturbation on both occasions, instead of urination or defecation.  Defendant testified that he did not consider his masturbation to be the result of a medical emergency.  *Id.* at 13–14.  Finally, the parties have so far stipulated that Defendant "ejaculated at least twice while on the premises of the correctional facility" and "masturbated in his officer's station and a bathroom while on the premises of the correctional facility."  Dkt. No. 146 at ¶¶ 33–34.

Plaintiff seeks to preclude evidence related to Defendant's prostate biopsy.  Dkt. No. 147-3 at 4–6.  Plaintiff argues that this evidence should be precluded because (i) during discovery, Defendant disclosed no related medical records or expert testimony; (ii) his physician's alleged statements are inadmissible hearsay; (iii) "Defendant's claim of a medical condition" is uncorroborated; and (iv) such evidence is prejudicial.  *Id.* at 5–6.

In response, Defendant argues that (i) his testimony is based on personal knowledge and is admissible lay testimony; and (ii) Plaintiff received "abundant notice" of his medical history and

had "ample opportunities" to request the relevant records. Dkt. No. 155 at 4–6. Defendant further clarifies that he "is not making a medical claim and the controversy in this case is not whether a medical condition exists or not. Nor is there a need for a medical diagnosis." *Id.* at 4. Defendant goes on to conclude that "there is no 'alleged medical claim' in dispute. A defendant may testify as to his perceived symptoms and experience so long as there is no technical or scientific knowledge that the jury will need to understand." *Id.* at 6. In footnotes, Defendant indicates that he intends to offer certain medical records at trial[2] and that he will seek to introduce testimony from his girlfriend at the time that "will go towards [Defendant]'s physical capabilities and the impact that his biopsy had on their ability to be intimate with each other." *Id.* at 6 nn.2 & 4.

### a. Medical records

Addressing the parties' discovery arguments first, Defendant asserts that "[s]ince the inception of this civil case, [Defendant] has been open and cooperative . . . about his urological issues and post-biopsy experiences." *Id.* at 6. In support of this contention, Defendant attaches and cites an excerpt from his response to Plaintiff's first set of interrogatories, dated April 27, 2022. Dkt. No. 155-2. Question 13(a) therein requested, *inter alia*, the name and "dates of treatment" for "all doctors . . . with whom [Defendant] consulted or by whom [Defendant] had been examined or treated from January 1, 2010 to the present." *Id.* at 3. Defendant objected to, *inter alia*, "the relevance and necessity of [his] medical condition prior to 2019 [as] not reasonably calculated to lead to admissible evidence." *Id.* Defendant then stated that in 2019 he "saw Dr.

---

[2] Defendant's exhibit list identifies a single exhibit containing Defendant's medical records, *see* Dkt. No. 140 at 7 ("Yoram Beer, M.D. records"). While Defendant's witness list also includes his treating physician, *see* Dkt. No. 141 at 2, Defendant's counsel represented during the final pretrial conference that the treating physician's testimony would be limited to the authentication of these certified medical records, and that he would only be called to give such testimony if there was an objection as to authenticity.

Yoram Beer on the following dates: 03/01/2019[,] 02/21/2019[, and] 01/22/2019." *Id.* Question 13(b) then asked for "[t]he diagnosis, treatment, and prognosis of any injuries and/or conditions." *Id.* Defendant again objected to, *inter alia*, "the relevance and necessity of [his] medical condition prior to 2019 [as] not reasonably calculated to lead to admissible evidence," before providing several diagnoses he received in 2019, including "[p]rostate nodule." *Id.*

Given Defendant's stated position that information relating to his medical condition(s) prior to 2019 is neither relevant nor necessary, the Court grants Plaintiff's Motion, to the extent that any medical records of Defendant dated prior to 2019 are excluded and any subsequent medical records that reference medical treatment of Defendant prior to 2019 are to be redacted before being offered at trial.

As to information relating to his medical condition(s) in 2019, however, Defendant did disclose to Plaintiff his treatment by Yoram Beer, M.D. *Id.* Additionally, Plaintiff questioned Defendant during his September 2023 deposition at some length regarding his prostate biopsy, including the name of his treating physician and the location where the procedure had been performed. Dkt. No. 147-2 at 4–18. Plaintiff thus had discovery into this subject, as well as ample time to pursue additional discovery prior to the close of discovery in January 2024. *See, e.g.,* Dkt. Nos. 109, 116, 118. Finally, the parties informed the Court during the final pretrial conference that Defendant has provided to Plaintiff the limited medical records he intends to offer at trial. Accordingly, the Motion's request to preclude Defendant from offering these medical records is denied.

### b. Testimony from Defendant's former girlfriend

The Motion is granted to the extent that testimony from Defendant's former girlfriend regarding Defendant's "physical capabilities and the impact that his biopsy had on their ability to

be intimate with each other," Dkt. No. 155 at 6 n.4, is precluded as irrelevant.[3]  The parties have stipulated that Defendant "masturbated in his officer's station and a bathroom" and "ejaculated at least twice" while at work.  Dkt. No. 146 at ¶¶ 33–34.  Moreover, Defendant identified no difficulty with masturbating, ejaculating, or having sexual intercourse during his deposition, at least according to the excerpts submitted by Plaintiff.  *See* Dkt. No. 147-2.  Defendant also otherwise appears to have produced no evidence to that effect in discovery.  *See* Dkt. No. 147-3 at 5.  The sole authority Defendant cites to support introducing certain testimony from his former girlfriend is distinguishable and unpersuasive.  Dkt. No. 155 at 6 n.4.  Among other reasons, the habeas petitioner therein had been convicted of rape in a state court criminal proceeding.  *Foster v. Lockhart*, 9 F.3d 722, 724 (8th Cir. 1993).  The petitioner asserted, *inter alia*, ineffective assistance of counsel because his defense attorney had not sufficiently developed and presented evidence of the petitioner's impotence at the time of the offense.  *Id.* at 725.  Such evidence included the petitioner's partial paralysis as a result of severe injuries from a car accident and a separate motorcycle accident prior to the offense; that the petitioner "never recovered from the heel cord severance;" needed to "always wear[] a leg brace on his right leg;" was "sexually dysfunctional" as a result of "bad nerve damage;" and related findings from a urologist who performed a nocturnal penile tumescence test.  *Id.* at 724–25.  Here, in contrast, Defendant has not identified any similar physical injuries or medical evidence, and even if he had, has conceded that there is no "need for a medical diagnosis" in this case.  Dkt. No. 155 at 4.

To the extent that testimony from Defendant's former girlfriend regarding their ability to be intimate could be relevant, the Court finds any probative value to be substantially outweighed

---

[3]  Testimony from Defendant's former girlfriend regarding Defendant's contemporaneous complaints of pain is addressed separately.  *See* Section III.B.10, *infra*.

by numerous dangers under Rule 403.  Given the parties' stipulations regarding Defendant's physical capabilities and actions while at work, this testimony risks confusing the issues, misleading the jury, and unfairly prejudicing Plaintiff.  Fed. R. Evid. 403.

### c.  Defendant's lay testimony

The Court agrees with Defendant, however, that he should be permitted to testify, as a lay witness, "about his perceived symptoms and experiences following his prostate biopsy," Dkt. No. 155 at 6, subject, of course, to the applicable Federal Rules of Evidence and consistent with this Court's evidentiary rulings.  *See Johnson v. Mauro*, No. 16-cv-00622, 2019 WL 2336070, at *6 (N.D.N.Y. June 3, 2019) ("[U]nder Federal Rule of Evidence 701, a lay witness's testimony 'in the form of an opinion is limited to one that is: . . . rationally based on the witness's perception' and 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' . . . [Defendant] may testify concerning his perceptions . . . [such as] his symptoms, and physical pain.  He may not, however, testify to opinions 'based on scientific, technical, or other specialized knowledge.'") (quoting Fed. R. Evid. 701) (precluding hearsay statement made to witness by medical personnel).[4]

None of Plaintiff's arguments to the contrary justify precluding Defendant from offering such lay testimony.  As discussed earlier, during discovery Plaintiff deposed Defendant regarding his perceived symptoms following the prostate biopsy.  *See* Dkt. No. 147-2 at 4–18.  Plaintiff's argument as to the lack of corroboration regarding Defendant's perceived symptoms goes to weight, not admissibility.  *Accord United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003)

[4] To the extent there are "certain statements" that a medical professional conveyed to Defendant and that Plaintiff wishes to preclude, she may raise objections as appropriate during Defendant's testimony at trial.  Dkt. No. 147-3 at 5.  Plaintiff's Motion specifically identifies no such hearsay statement.  *See id.* at 5–6.

(noting that "[a]ny lack of corroboration goes only to the weight of the evidence," and "[t]he weight of the evidence is a matter for argument to the jury") (citations omitted).  Indeed, Defendant has made clear that no physician instructed him to masturbate, *see* Dkt. No. 155 at 5; that he did not perceive a medical emergency that required him to masturbate, *see id.*; *see also* Dkt. No. 147-2 at 13–14; and that there is no "need for a medical diagnosis" in connection with his lay testimony about masturbating at work, Dkt. No. 155 at 4.  To the extent Plaintiff wishes to do so, she will be able to cross examine Defendant on his lay opinion on this topic.  For similar reasons, Plaintiff's generalized prejudice argument is unavailing, and in fact Plaintiff does not articulate why such testimony risks "the potential of an inappropriate appeal to the jury's sympathy." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 940 (2d Cir. 1994).

For all these reasons, Plaintiff's request to preclude Defendant's own testimony about his perceived symptoms following his surgical procedure is denied.

### 2. Plaintiff's criminal history

Plaintiff next argues that her criminal history should be precluded.  Dkt. No. 147-3 at 6–7.  Plaintiff further asserts that "as to any other arrests that did not result in a criminal conviction, the same should be excluded from the jury's consideration." *Id.* at 7.  However, Plaintiff does not identify any specific conviction or arrest that she wishes to preclude, *id.*, but suggests her criminal history includes unidentified "petit larcenies and probation violation [sic]," Dkt. No. 147-1 at 2.  Defendant makes a similarly generic argument in opposition, arguing that unspecified convictions should be admissible under Rule 609(a)(2).  Dkt. No. 155 at 6–7.  Defendant similarly summarizes Plaintiff's criminal history as including "several convictions for larceny related activities" and, apparently, "admitted violations of probation," but provides no further details. *Id.* at 7.  Defendant

also makes a vague argument that the related "underlying acts" and "acts of deception and lying" by Plaintiff should be admissible for impeachment purposes. *Id.*

Given the parties' failure to specify, the Court requested at the final pretrial conference that the parties confer and identify the convictions that are at issue. Accordingly, the Court reserves on this portion of the Motion until the parties provide "the appropriate factual context." *Hennessy*, 840 F. Supp. 2d at 536 (citation omitted).

### 3. Defendant's arrest and dismissed criminal prosecution

Several sentences after Plaintiff argues that her arrests should be excluded because "[e]vidence of arrests that do not result in a conviction is not admissible under FRE 609," she proceeds to assert that Defendant's arrest, which did not result in a conviction, should nonetheless be admissible. Dkt. No. 147-3 at 7. Plaintiff further argues that Defendant's subsequent prosecution, in a since-dismissed criminal case, should also be admitted. *Id.* at 7–8. Plaintiff states that because the dismissal was "not based on the merits of the criminal case," "[a]ll facts relative to the arrest and criminal proceeding on the claims being made in this civil action should be available for consideration of any juror in this action." *Id.* at 7. Plaintiff suggests such evidence has probative value, but does not identify that value, and further contends that there is no prejudice to Defendant because the criminal prosecution "was concluded entirely in his favor." *Id.* at 7–8.

In opposition, Defendant argues that (i) it is not clear "for what purpose the jury would consider th[is] information;" (ii) prior arrests, standing alone, are generally not admissible for impeachment purposes; and (iii) the introduction of Defendant's arrest and criminal prosecution is highly prejudicial, given the similarity between the criminal allegations and Plaintiff's civil allegations. Dkt. No. 155 at 8–9. As a result, Defendant "respectfully requests that this Court preclude Plaintiff from introducing evidence of [Defendant]'s arrest and the subsequent criminal

proceedings, neither of which resulted in a conviction." *Id.* at 9.  Notwithstanding this request, Defendant's own Motion requests that he be able to offer various evidence arising from his criminal prosecution.  *See* Section III.B.5–7, 9, *infra*.

In the main, the Court agrees with Defendant's opposition to this portion of Plaintiff's Motion.  Plaintiff has failed to articulate how Defendant's arrest and dismissed criminal proceeding "has any tendency to make a fact more or less probable" in this civil proceeding, nor that the existence of such evidence "is of consequence in determining" this action.  Fed. R. Evid. 401; *see also United States v. Bracy*, No. 20-cr-483, 2022 WL 17801133, at *8 (E.D.N.Y. Dec. 19, 2022) (noting the general rule that a judgment of acquittal is not usually admissible and stating that "[Defendant] does not have evidence of an acquittal—and evidence of charges that were dropped for unknown reasons is even less relevant than an acquittal.  The fact that the state charges were dismissed is hearsay and is not relevant to [defendant]'s culpability [in the instant action]"); *Roguz v. Walsh*, No. 09-1052, 2013 WL 1498126, at *10 (D. Conn. Apr. 5, 2013) (precluding evidence of defendant officer's arrest and criminal prosecution in Section 1983 action and noting that defendant's "arrest and prosecution have little probative value" and that "arrests are not probative of the facts underlying the arrest").

Even if Plaintiff could establish that this evidence is relevant and otherwise admissible, any such probative value would be substantially outweighed by numerous considerations under Rule 403, principally the dangers of unfair prejudice and misleading and confusing the jury.  *See Thomas v. O'Brien*, 539 F. App'x 21, 21–22 (2d Cir. 2013) (affirming trial court's decision in Section 1983 action "to exclude evidence regarding the dismissal of [the] state court criminal charges" because the prejudicial effect and potential to confuse the jury "substantially outweighed" any probative value); *Roguz*, 2013 WL 1498126, at *10 ("The arrest has the potential to prejudice

the jury's perception of the facts at issue. . . . The plaintiff will have the opportunity to question [defendant] . . . about [defendant]'s conduct, and thus evidence of his arrest and prosecution would be cumulative. The limited probative value of [defendant]'s arrest and subsequent criminal case is substantially outweighed by the danger of unfair prejudice, and evidence relating to [defendant]'s arrest and criminal prosecution is thus inadmissible."). While the Court is cognizant of the severity of Plaintiff's allegations, there are nonetheless no "[c]rimes at [i]ssue" in this civil action, and any suggestion otherwise would be prejudicial, misleading, and confusing. Dkt. No. 147-3 at 7.

In addition, Rule 403 considerations are not limited to Defendant in this instance. The fact that criminal charges based on Plaintiff's allegations were dismissed also risks unfairly prejudicing her and misleading and confusing the jury as to the merit of her present allegations. Particularly if the jury is informed, as Plaintiff suggests they should be, that the criminal prosecution "was concluded entirely in [Defendant's] favor." *Id.* at 8.

Plaintiff has also failed to articulate why evidence of Defendant's prior arrest and dismissed prosecution has any impeachment value. *See, e.g., Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) ("The court finds that these unproven charges and prior arrests are inadmissible for impeachment purposes. Rule 609 . . . is inapplicable because, none of the unproven charges resulted in convictions. . . . Similarly, [plaintiff's] reliance on Rule 608 . . . is unavailing. None of the unproven charges or prior arrests bear on [the defendant]'s character for truthfulness and, thus, are also inadmissible pursuant to Rule 608.") (citations omitted) (collecting cases).

Accordingly, this portion of Plaintiff's Motion is denied, and evidence of Defendant's arrest and dismissed criminal prosecution is excluded from trial. Such evidence includes, but is

not limited to, the "Albany County District Attorney Department Case Report" and the "Grand Jury Indictment" listed on Plaintiff's exhibit list, Dkt. No. 149 at 1, as well as testimony from an assistant district attorney who "will testify as to the handling of Defendant's criminal case involving Plaintiff's claims in this action," and the criminal investigator who "will testify the investigation [sic] of the claims made by Plaintiff," Dkt. No. 148 at 1.[5]  Despite Defendant's stated position that such evidence should be precluded, the Court notes that his witness list presently includes an assistant district attorney who will testify regarding the "[i]nvestigation and prosecution of *People v. Michael Snyder*" and two witnesses who will testify, in part, regarding statements made to assistant district attorneys.  Dkt. No. 141 at 1–2.  Defendant's exhibit list also currently includes numerous records that appear to have been authored by assistant district attorneys during the course of his prosecution.  *See, e.g.,* Dkt. No. 140 at 5–6; *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 350 (S.D.N.Y. 2011) (precluding "documents created by the prosecutors in the course of the state prosecution" related to plaintiff's Section 1983 claims "[b]ecause the introduction of these documents raises a risk of prejudice and confusion that outweighs any probative value").

However, the Court notes that this ruling does not necessarily apply to the use of grand jury testimony for purposes of impeachment.  *See generally, Marshall v. Randall*, 719 F.3d 113 (2d Cir. 2013); *Coggins v. Buonora*, 776 F.3d 108, 113 n.8 (2d Cir. 2015) ("As *Marshall* demonstrates, grand jury testimony may ultimately be admissible on summary judgment or at trial for a purpose other than for its truth, for example, for impeachment.").  Additionally, "if it becomes necessary to introduce testimony from prior criminal proceedings at trial and the Court finds such

---

[5] Proposed testimony from two members of the New York State Police Laboratory who analyzed certain evidence obtained during the criminal prosecution is addressed separately.  *See* Section III.B.3, *infra*.

testimony admissible" the parties shall refer to any grand jury testimony as testimony from a "prior proceeding," without reference to the nature of the proceeding as criminal, or the defendant, charges, or outcome.  *United States v. Ayers*, No. 20-cr-239, 2024 WL 1158686, *15 (E.D.N.Y. Mar. 18, 2024); *see also United States v. Hicks*, No. 15-cr-33, 2018 WL 1789932, at *2 (W.D.N.Y. Apr. 16, 2018) (similar).

To the extent that Defendant opens the door to the existence of the criminal prosecution against him, the Court may revisit this ruling.

### B. Defendant's Motion *in Limine*

Defendant seeks to preclude (i) references to Plaintiff as "victim" during the trial and in exhibits; (ii) Plaintiff's statements in certain medical records that are unrelated to medical treatment or medical history; (iii) any expert testimony; (iv) any damages testimony; (v) certain questioning or testimony which Defendant views as objectionable; and to permit (vi) questioning of Plaintiff regarding her relationships with other men; (vii) testimony regarding Plaintiff's character for truthfulness; (viii) evidence of Plaintiff's criminal history; (ix) certain evidence relating to Plaintiff's prior statements; and (x) certain testimony from Defendant's former girlfriend.  *See* Dkt. No. 139.  The Court addresses each request in turn.

### 1. Preclusion of references to Plaintiff as "Victim"

Defendant argues that references to Plaintiff as a "victim," including in witness testimony and exhibits, are prejudicial and should be excluded or redacted.  Dkt. No. 139 at 8–9.  The core of Plaintiff's opposition is that "Defendant was charged with multiple crimes concerning Plaintiff, which simply was not put forth before any criminal judge or jury because of a technical dismissal. This does not negate Plaintiff as a victim to sexual assault."  Dkt. No. 156-1 at 3.

Much of Plaintiff's argument is already addressed by the Court's earlier ruling. *See* Section III.A.3, *supra*. Because evidence of Defendant's criminal prosecution has been precluded, Plaintiff may not refer to herself as a victim of a crime in connection with that proceeding and may not elicit similar testimony. To this extent, Defendant's Motion is granted.

The Court is not persuaded, however, that any reference to Plaintiff as a "victim" would be unfairly prejudicial, particularly given her allegations that Defendant repeatedly sexually assaulted her. Given the unique facts of this civil case, the balance of this portion of Defendant's Motion is denied. *See United States v. Clanton*, No. 23-cr-328, 2024 WL 1072050, at *17 (E.D.N.Y. Mar. 12, 2024) (noting that "[n]o Court within this District has ruled that the use of the word 'victim' is *per se* prejudicial" and denying defendant's request "to issue a blanket ruling that the use of the word 'victim'" was unfairly prejudicial).

Should counsel or a witness refer to Plaintiff as a victim so "repeatedly [that] it could become prejudicial," Defendant may renew his request and the Court will consider it at that time. *Chism v. New Holland N. Am., Inc.*, No. 07-cv-00150, 2010 WL 11520495, at *4 (E.D. Ark. Feb. 1, 2010); *see also Greigo v. BMW of N. Am. LLC*, No. 22-cv-01281, 2024 WL 2021777, at *6 (D. Ariz. May 7, 2024) (noting that 'the 'mere use of the term ['victim'] does not prejudice a Defendant, as it may be a 'fair comment on the evidence.' . . . Yet the Court also notes that the manner and frequency of its use may ultimately result in a prejudicial effect as it may influence the jury's ultimate decision") (first alteration in original) (first alteration in original) (citations omitted); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2018) ("With respect to [ ] inflammatory language, courts often prohibit the use of certain 'pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim' and such statements 'do not bear on the issues being tried.'") (quoting *Aristocrat Leisure*

*Ltd. v. Deutsche Bank Tr. Co. Ams.*, No. 04-cv-10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009)).

### 2. Preclusion or redaction of Plaintiff's medical records

Defendant primarily argues that statements by Plaintiff within a particular Albany Medical Center Hospital ("AMCH") record that are "unnecessary to diagnosis and treatment" and that identify Defendant Snyder are hearsay and should be precluded.[6]   Dkt. No. 139 at 9–11.   Defendant has proposed corresponding redactions based on his interpretation of Rule 803(4) of the Federal Rules of Evidence.   Dkt. Nos. 139-2, 139-3.   In opposition, Plaintiff does not address Defendant's hearsay argument.   Dkt. No. 156-1 at 3–4.   Instead, Plaintiff argues that she "has no intention of offering testimony on medical treatment outside of those records and medical authorizations provided to date," and asserts that Rule 403 considerations weigh against redacting any references to Defendant.   *Id.*

Rule 803(4) provides an exception to the hearsay rule if a statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."   Fed. R. Evid. 803.   In general, "[s]tatements made relating to cause are admissible," while "statements related to fault

---

[6] While the heading of this section of the Motion mentions "Albany Medical Center Hospital or Other Medical Records," Defendant has attached proposed redactions for only certain AMCH medical records and does not identify any other AMCH records, or any other medical records, that should be precluded.   *See* Dkt. No. 139 at 9; Dkt. Nos. 139-2, 139-3.   To the extent that the Motion requests preclusion of unspecified medical records, it is denied.   Defendant cites no authority for such blanket preclusion.   Plaintiff may seek to admit medical records at trial, subject to the applicable Federal Rules of Evidence, including establishing the necessary foundation, and consistent with this Court's evidentiary rulings.   *See, e.g., Duchnowski v. Cnty. of Nassau*, 416 F. Supp. 3d 179, 182 (E.D.N.Y. 2018) ("[I]ntroducing apparent hearsay evidence under the medical records exception requires the party seeking introduction to 'lay a foundation'—that is, to demonstrate that the records at issue are what they seem to be and that they satisfy the requirements of the hearsay exception.") (citing *Djangmah v. Falcione*, No. 08-cv-4027, 2013 WL 6388364, at *5 (S.D.N.Y. Dec. 5, 2013)).

are inadmissible." *Johnson v. Tuffey*, No. 01-cv-1907, 2011 WL 4345285, at *5 (N.D.N.Y. Sept. 15, 2011) (quoting *McCollum v. McDaniel*, 32 F. App'x 49, 55 (7th Cir. 2002)); *see also Mauro*, 2019 WL 2336070, at *5 ("The Advisory Committee Notes indicate that, while 'statements of the patient's condition are exempted from the hearsay rule because of the patient's strong motivation to be truthful in order to obtain the appropriate diagnosis and treatment,' statements that go beyond causation . . . and assign fault for a medical condition are not excepted.") (alteration in original) (citations omitted). And "[w]hile statements related to fault are inadmissible, statements referencing assault support an inference of cause more than fault and are consistent with the purpose of providing treatment and are properly admitted." *Granger v. City of Watertown*, No. 20-cv-0189, 2023 WL 418068, at *5 (N.D.N.Y. Jan. 26, 2023) (quoting *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d Cir. 1978)). Finally, "[s]o long as the identity of the perpetrator is not disclosed, 'a patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment." *Id.* (quoting *United States v. Gabe,* 237 F.3d 954, 957–58 (8th Cir. 2001)).

As for Defendant's proposed redactions, Dkt. No. 139-3, Plaintiff objects only to the "exclusion of any part of the medical record which references the Defendant." Dkt. No. 156-1 at 3. Plaintiff's generic prejudice argument on this point is unpersuasive. *See Granger*, 2023 WL 418068, at *5. The Court finds that Defendant's name on the specific medical records that have been submitted, Dkt. No. 139-2, should be precluded. *See, e.g., Tuffey*, 2011 WL 4345285, at *5. The Motion is granted to this extent. As to the balance of Defendant's proposed redactions, and

as discussed during the final pretrial conference, the parties are directed to confer and agree upon redactions that comport with the principles set forth above.

### 3. Expert testimony

Defendant argues that because Plaintiff did not comply with expert discovery requirements, she should be precluded from offering testimony from five potential expert witnesses. *See* Dkt. No. 139 at 11–14. Plaintiff's witness list contains only two of those witnesses, a serologist and a DNA analyst from the New York State Police Laboratory. *See* Dkt. No. 148 at 2. At the final pretrial conference, and consistent with Defendant's responses to Plaintiff's counterstatement of material facts at summary judgment, the parties indicated that they would be able to reach a factual stipulation that renders testimony from these witnesses unnecessary. *See, e.g.,* Dkt. No. 130-3 at ¶¶ 21, 23–24; Dkt. No. 133-2 at ¶¶ 21, 23–24. Accordingly, this Portion of the Motion is denied as moot.

### 4. Damages testimony

Defendant next argues that because Plaintiff failed to provide a detailed response in response to an interrogatory from November 2021, she should be precluded from introducing any damages testimony. Dkt. No. 139 at 15–16. Plaintiff responds that she properly disclosed her claim for $10,000,000 in damages "totaling loss of future earnings and earning capacity, past and future pain and suffering, punitive and compensatory damages." Dkt. No. 156-1 at 4–5.

However, "Plaintiff makes no objection to [precluding] the total loss of future earnings and earning capacity." *Id.* at 5. Additionally, the parties agreed at the final pretrial conference that Plaintiff is not asserting a claim for loss of earnings and earnings capacity. Given the parties' agreement, the Motion is granted to the extent that Plaintiff is precluded from presenting evidence regarding loss of earning capacity or future earnings.

The balance of this portion of the Motion, which seeks to preclude all other damages testimony on the basis of a purportedly incomplete discovery response by Plaintiff in November 2021, is denied. To the extent that Defendant believed Plaintiff's response was incomplete, he had several years of subsequent discovery to request additional information. He also has had an additional year since the close of discovery in which to raise this purported discovery dispute. He has not done so. Accordingly, Plaintiff may present evidence relating to her claim for "past and future pain and suffering, punitive and compensatory damages" at trial. *Id.*

### 5. Miscellaneous questioning and testimony[7]

Defendant seeks to preclude certain questioning and testimony that, he asserts, "either lack[s] a factual predicate, [is] confusing or ambiguous, or would cause undue prejudice which would outweigh any probative value." Dkt. No. 139 at 16–20. Plaintiff's three-sentence opposition primarily states that her "questioning of any parties or witnesses in this trial will be based on factual predicate [sic]" and that she opposes Defendant's "object[ion]s to the witnesses' characterizations of Defendant, which are completely permissible." Dkt. No. 156-1 at 5.

Defendant's request to preclude testimony from Correction Officer Julie Hall regarding her personal observations of Plaintiff and Defendant is denied. Defendant primarily argues that these observations are contradicted by different observations from other witnesses. Dkt. No. 139 at 16–18. That is a question of weight, not admissibility, and for the jury to decide.

Defendant's request to preclude testimony about his prior relationship with Amanda Hart and a related arrest is granted. Dkt. No. 139 at 18 & n.3. Plaintiff did not oppose this request, *see*

---

[7] Defendant appears to frame these, and other, requests as precluding Plaintiff, but not necessarily himself, from seeking to introduce certain evidence. As noted earlier, to the extent Defendant opens the door on topics the Court has precluded, the Court may revisit its rulings. *See* Section III.A.3, *supra*.

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.") (citation omitted), and the Court has already excluded evidence of another arrest, *see* Section III.A.3, *supra*. More importantly, there is little if any probative value, as well as a substantial danger of unfair prejudice, and propensity evidence is generally inadmissible. *See* Fed. R. Evid. 401–404.

The Court reserves on Defendant's request to preclude "testimony about an incident involving a disciplinary charge for possessing his cellphone while working in the correctional facility." Dkt. No. 139 at 18–19. As discussed during the final pretrial conference, the date of this incident is necessary to assess admissibility. *See Hennessy*, 840 F. Supp. 2d at 536.

Defendant's request to preclude questioning and testimony related to a prior purportedly inconsistent statement made by Correction Officer Len in his grand jury testimony is denied. Dkt. No. 139 at 19. The parties indicated during the final pretrial conference that only Correction Officer Len's deposition testimony would be offered at trial.

Defendant's unopposed request to preclude questioning or testimony "that a correction[] officer can request that any inmate be allowed to engage in runner duties" is granted. Dkt. No. 139 at 19. This issue does not appear relevant, given the parties' stipulation that Defendant "did not request that Plaintiff become a runner on his tier, 7W." Dkt. No. 146 at ¶ 19.

Defendant's request to preclude "testimony on allegations made by any other inmate which lack a factual predicate submitted in writing" is denied. Dkt. No. 139 at 19–20. Defendant cites no authority for his sweeping position that testimony is inadmissible without written corroboration. However, to the extent that Plaintiff intends to offer evidence that Defendant "committed any other sexual assault," she must "disclose it to the party against whom it will be offered, including

witnesses' statements or a summary of the expected testimony.  The party must do so at least 15

days before trial or at a later time that the court allows for good cause."  Fed. R. Evid. 415; *see*

*also Carroll v. Trump*, No. 23-793-cv, 2024 WL 5241501 (2d Cir. Dec. 30, 2024).

### 6.  Plaintiff's other relationships

Defendant argues that he should be permitted to inquire regarding (i) Plaintiff's

relationships with other men, and (ii) related statements about Plaintiff made by an assistant district

attorney in connection with Defendant's criminal prosecution.  Dkt. No. 139 at 20–22.  As to the

former, Defendant states he wishes to introduce evidence regarding statements Plaintiff allegedly

made to other men, to the effect that she "discussed having a baby," and "discussed having a

relationship."  *Id.* at 20–21.  As to the latter, Defendant seeks to question Plaintiff regarding

statements set forth in two letters from an assistant district attorney.  *Id.* at 20, 22; Dkt. Nos. 139-

5, 139-6.  That correspondence contains, *inter alia*, significant detail and discussion of plaintiff's

purported sexual history.  Plaintiff objects, primarily based on Rule 412.  Dkt. No. 156-1 at 5–6.

"Under Federal Rule of Evidence 412, evidence of a plaintiff's sexual behavior or sexual

predisposition is inadmissible except in limited circumstances when the prejudicial effect of the

evidence is substantially outweighed by its probative value."  *Basile v. Spagnola*, 346 F. App'x

687, 689 (2d Cir. 2009) (citing Fed. R. Evid. 412).  As the Second Circuit has observed, the

Advisory Committee Notes "explain that 'behavior' encompasses 'activities of the mind, such as

fantasies.' . . . [and that] sexual predisposition evidence includes matters 'relating to the alleged

victim's mode of dress, speech, or lifestyle[.]'"  *Wolack v. Spucci*, 217 F.3d 157, 160 (2d Cir.

2000) (quotations and citations omitted).  "The Rule's expanded protection 'aims to safeguard the

alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping

that is associated with public disclosure of intimate sexual details and the infusion of sexual

innuendo into the factfinding process." *Id.* (quoting Fed. R. Evid. 412 advisory committee's note to 1994 amendment).

Defendant does not even attempt to argue that the probative value of Plaintiff's sexual relationships substantially outweighs their prejudicial effect under Rule 412. He instead asserts that such inquiry is permissible because it could impeach Plaintiff's credibility. As set forth by Defendant, this argument is unpersuasive. *See, e.g., United States v. Perez*, No. 20-1982-cr, 2022 WL 1421408, at *2 (2d Cir. May 5, 2022) (summary order) ("We [have] stressed that the 'very purpose' of Rule 412 'is to preclude defendants from arguing that because the victim previously consented to have sex – for love or money – her claims of coercion should not be believed.'") (quoting *United States v. Rivera*, 799 F.3d 180, 184 (2d Cir. 2015)). This portion of the Motion is thus denied under both Rule 412 and Rule 403. *See id.* ("Provisions such as Rule 412 not only 'serve the broad purpose of protecting the victims of [sexual assault] from harassment and embarrassment in court,' but also 'reinforce the trial judge's traditional power to keep inflammatory and distracting evidence from the jury.'") (quoting *Agard v. Portuondo*, 117 F.3d 696, 702 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000)).

As to related statements by an assistant district attorney, the Court has already excluded evidence of Defendant's arrest and dismissed criminal prosecution from trial—at his request. *See* Section III.A.3, *supra*. Defendant's request to question Plaintiff regarding statements made by an assistant district attorney during this prior proceeding is thus denied. *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016) (Breyer, J.) ("After all, in the law, what is sauce for the goose is normally sauce for the gander.").

### 7.  Plaintiff's reputation for lack of truthfulness

Defendant sets forth a separate request, pursuant to Rule 608(a) of the Federal Rules of Evidence, that he "be permitted to present evidence of Plaintiff's bad reptation for truthfulness and veracity to impeach her credibility."  Dkt. No. 139 at 22–23.  Defendant again identifies no such evidence.

To the extent that such evidence is statements by an assistant district attorney, it has already been excluded.  *See* Section III.A.3 & n.7, *supra*; *see also Adams v. City of New York*, 993 F. Supp. 2d 306, 324 (E.D.N.Y. 2014) (noting that "the Second Circuit has made clear that 'the credibility of witnesses is exclusively for . . . determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at trial'" and precluding such testimony from assistant district attorneys as to the credibility of a witness in Section 1983 action) (alteration in original) (quoting *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010)).  To the extent such evidence is from Plaintiff's ex-husband, who, based on Defendant's witness list, is expected to testify regarding "[m]arriage to Plaintiff, Plaintiff's [r]eputation for [t]ruthfulness," Dkt. No. 141 at 2, and his testimony relates to Plaintiff's sexual history, that has already been excluded.[8] *See* Dkt. No. 139-5 at 3–4; *see also Perez*, 2022 WL 1421408, at *2; Section III.B.6, *supra*. Additionally, Defendant has not adequately explained why evidence relating to Plaintiff's prior relationship should be admitted while evidence relating to his prior relationship should be

---

[8] Defendant also does not address the potentially privileged nature of testimony from Plaintiff's former spouse.  *See, e.g., United States v. Pugh*, 945 F.3d 9, 18 (2d Cir. 2019) ("'The confidential communications privilege . . . [shields] communications made in confidence during a valid marriage.['] . . . The purpose of the privilege is to provide 'assurance that all private statements between spouses—aptly called the best solace of human existence—will be forever free from public exposure.'") (first and second alterations in original) (quoting *In re Witness Before Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986)).

excluded.  *See Heffernan*, 578 U.S. at 272.  For all these reasons, this portion of the Motion is denied without prejudice to renewal at trial.

### 8.  Plaintiff's criminal history

Defendant argues that he should be permitted to inquire regarding "the convictions and underlying acts of Plaintiff."  Dkt. No. 139 at 23.  Plaintiff opposes largely based on Rule 403 considerations.  Dkt. No. 156-1 at 6–7.  Neither party identifies any specific evidence.  Given the Court's reservation on this very same topic earlier, this seemingly duplicative request is denied as moot.  *See* Section III.A.2, *supra*.

### 9.  Evidence relating to Plaintiff's prior statements

Defendant claims there are "several instances of inconsistencies" between Plaintiff's deposition testimony and statements made by (i) a criminal investigator, in turn regarding statements by another incarcerated woman, and (ii) an assistant district attorney.  Dkt. No. 139 at 24.  Defendant does not specify any evidentiary rules under which he seeks to introduce evidence of these statements.  *Id.* at 24–25.

As an initial matter, testimony from both the assistant district attorney and the criminal investigator have already been precluded, and Defendant's contrary request is denied.  *See* Section III.A.3 & n.7, *supra*.  Moreover, statements made by a criminal investigator, regarding another incarcerated woman, do not constitute prior inconsistent statements made by Plaintiff.  *See, e.g., United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("We have held, however, that a 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.") (citation omitted); *United States v. Strother*, 49 F.3d 869, 875 (2d Cir. 1995) (similar).  This portion of the Motion is thus denied.

### 10. Testimony from Defendant's former girlfriend

Finally, Defendant argues that he should be permitted to present testimony from his girlfriend regarding his complaints of pain following his prostate biopsy, as well as "his ability to be intimate with her." Dkt. No. 139 at 25–26. As to the former, Defendant contends that his complaints are admissible under Rule 803(3) of the Federal Rules of Evidence because the statements he made "were contemporaneous with the pain he felt and his state of mind." *Id.* at 26. Defendant concludes that testimony from his former girlfriend "is relevant and highly probative as it shows [Defendant]'s intent, state of mind and physical capabilities at the time that the alleged incident took place." *Id.* In opposition, Plaintiff objects to "medical testimony" from either Defendant or his former girlfriend, and largely reiterates her arguments in favor of precluding Defendant's alleged medical condition. Dkt. No. 156-1 at 7; *see also* Dkt. No. 147-3 at 4–6.

Testimony from Defendant's former girlfriend regarding Defendant's purported physical capabilities and ability to be intimate with her has already been precluded on numerous grounds. *See* Section III.A.1, *supra*. Defendant's contrary request is denied.

Testimony from Defendant's former girlfriend regarding his "contemporaneous complaints of pain resulting from the prostate biopsy" appears to be a different matter however. Dkt. No. 139 at 26. Rule 803(3) provides, in relevant part, an exception to the hearsay rule for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." Fed. R. Evid. 803(3). Thus, such complaints by Defendant to his former girlfriend could be admissible. *See, e.g., United States v. Carascia*, 951 F.2d 474, 487 (2d Cir. 1991) ("Recognizing that the exception under Rule 803(3) is a specialized application of the present sense impression and excited utterance exceptions preceding it in Rule 803, the reasons for the state of mind exception focus on the contemporaneity

of the statement and the unlikelihood of deliberate or conscious misrepresentation.") (citing *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984)).

At this juncture, however, the Court reserves on this portion of the Motion. Prior to offering such evidence at trial, Defendant may provide a more detailed proffer addressing the nature and contemporaneity of his complaints of pain to his former girlfriend.

## IV.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion *in limine*, Dkt. No. 147, is **GRANTED in part, DENIED in part, and reserved in part**, as set forth in Section III of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant's motion *in limine*, Dkt. No. 139, is **GRANTED in part, DENIED in part, and reserved in part**, as set forth in Section III of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 9, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge